Filed: October 4, 2001

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 97-2358
(A94-231-363)

Agwu Okpa, a/k/a Okpa Agwu Okpa,

Petitioner,

versus

U.S. Immigration & Naturalization Service,

Respondent.

O R D E R

The court grants the motion to publish and amends its opinion filed August 28, 2001, as follows:

On the cover sheet, section 1 -- "UNPUBLISHED" is changed to read "PUBLISHED."

On the cover sheet, section 6 -- the status line is changed to read "Petition for review dismissed in part and denied in part by published per curiam opinion."

On page 3, paragraph 1, line 5 -- the words "IRS officer" are corrected to read "INS officer."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AGWU OKPA, a/k/a Okpa Agwu
Okpa,
Petitioner,

v.                                                    No. 97-2358

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A94-231-363)

Argued: June 7, 2001

Decided: August 28, 2001

Before WILKINSON, Chief Judge, and MICHAEL and
KING, Circuit Judges.

_____

Petition for review dismissed in part and denied in part by pub-
lished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Taiwo A. Agbaje, AGBAJE & ASSOCIATES, P.A., Bal-
timore, Maryland, for Petitioner. Papu Sandhu, Senior Litigation
Counsel, Office of Immigration Litigation, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF:** Stuart E. Schiffer, Acting Assistant Attor-

ney General, Allen W. Hausman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

PER CURIAM:

Okpa Agwu Okpa petitions for review of the decision of the Board of Immigration Appeals (BIA) denying him a waiver of inadmissibility under INA § 212(i), 8 U.S.C. § 1182(i)(1). Okpa claims that the BIA erred in applying retroactively the version of § 212(i) as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). In the alternative, he argues that the BIA abused its discretion in not granting him a waiver. The INS argues that we lack jurisdiction over Okpa's claims. We hold that we have jurisdiction to review Okpa's retroactivity claim, but not his abuse of discretion claim. On the merits of the retroactivity claim, we hold that the BIA did not err in applying amended § 212(i) to his claim.

I.

On February 16, 1990, Okpa, a native of Nigeria, entered the United States on a nonimmigrant visitor's visa, which authorized him to be in this country for two months. Okpa overstayed his visa and remained here illegally. In February 1992 Jason Addo, who was affiliated with the Liberian embassy, approached Okpa with a crooked scheme to remedy Okpa's unlawful status. Okpa paid Addo $2500 in cash for his promise to help Okpa obtain Temporary Protective Status (TPS) that would be based on a fraudulent application. TPS allows an alien to remain in the United States legally, and this status may be granted to an alien who is a national of a designated country that is experiencing an ongoing armed conflict. See 8 U.S.C. § 1254a(b)

2

(1)(A). Liberia was in the middle of a civil war, and Okpa (following Addo's advice) filed a TPS application falsely stating that he was a citizen of Liberia. Addo in turn was to submit to the INS documentation from the Liberian embassy showing that Okpa was Liberian. At a June 1992 interview with an INS officer concerning his TPS application, Okpa initially stated that he was Liberian. However, when pressed by the officer, Okpa recanted and admitted that he was from Nigeria. The INS denied his TPS application because he failed to establish Liberian citizenship.

In December 1992 the INS charged Okpa as deportable for overstaying his visa. About two weeks later Okpa married Cynthia Sowers, whom he had known for almost two years. The threat of deportation prompted Okpa to apply for the discretionary relief of adjustment of status under 8 U.S.C. § 1255(a), which allows the Attorney General to change an alien's status to that of lawfully admitted for permanent residence. Okpa, however, was inadmissible for permanent residence because he had submitted a fraudulent TPS application. See 8 U.S.C. § 1182(a)(6)(C)(i). To solve this problem and put himself back on track to seek an adjustment of status under § 1255(a), Okpa sought a waiver of inadmissibility under § 212(i) of the INA, 8 U.S.C. § 1182(i). Section 212(i) allows for a waiver when the alien is inadmissible because he has filed a fraudulent document with the INS. At the time Okpa sought a waiver of inadmissibility, § 212(i) permitted the Attorney General to grant a waiver "in the case of an immigrant who is the spouse . . . of a United States citizen." The main consideration in a § 212(i) waiver decision was whether the alien's spouse would experience any hardship if the alien was deported. See Matter of Da Silva, 17 I. & N. Dec. 288, 290 (1979).

An immigration judge held a hearing on Okpa's waiver of admissibility. Okpa presented evidence of the potential hardship to his wife if he was deported. His wife was a full-time student who earned about $500 a month from part-time work. She testified that Okpa paid all of the household bills and helped care for her two children from a previous marriage. A friend of Okpa's testified that Okpa and his wife had a good marriage. At the conclusion of the hearing, the IJ denied Okpa's waiver application. However, the IJ erroneously treated Okpa's application as filed under § 212(h), not § 212(i). Section 212(h) allows for a waiver when the alien is inadmissible because of

3

certain criminal activity. <u>See</u> 8 U.S.C. § 1182(h). A waiver may be granted under § 212(h) only if there is a showing of "extreme hardship" to the alien's spouse. <u>Id.</u> The IJ's error in applying § 212(h) was significant. Okpa was seeking a waiver under § 212(i), which did not require a showing of extreme hardship. Rather, § 212(i) only required a showing of <u>plain</u> hardship to the alien's spouse. Indeed, several BIA decisions had stressed the distinction between the standards of §§ 212(i) and 212(h). <u>See Matter of Alonzo</u>, 17 I. & N. Dec. 292, 294 (1979) ("[C]ongress intended that different standards be applied to [§§ 212(i) and 212(h)] with a more liberal standard to be applied to § 212(i), otherwise they would read the same.").

In applying the extreme hardship standard, the IJ noted that Okpa and his wife were married right after the INS initiated the deportation proceedings against Okpa. The IJ questioned whether the marriage was one of convenience to "avoid[] the problems of immigration." Ultimately, the IJ placed great weight on the fact that Okpa's wife did not display any emotion over the prospect that he might be deported. Because Okpa failed to establish that his deportation would result in extreme hardship to his wife, the judge denied his application for waiver of inadmissibility and, consequently, for adjustment of status.

Okpa appealed the IJ's decision to the BIA, arguing that the IJ erroneously considered his waiver application under § 212(h), rather than under § 212(i). While Okpa's appeal was pending with the BIA, Congress amended § 212(i) to require a showing of extreme hardship. <u>See</u> IIRIRA, Pub. L. No. 104-208, § 349, 110 Stat. 3009-546, 3009-639 (codified as amended at 8 U.S.C. § 1182(i)). This meant that §§ 212(i) and 212(h) now required the same showing of extreme hardship. The BIA held that amended § 212(i) applied retroactively to Okpa's case. As a result, Okpa had to show extreme hardship in order to obtain a waiver of admissibility. The BIA affirmed the IJ's denial of a waiver, holding that the IJ did not err in concluding that Okpa's wife would not endure extreme hardship.

Okpa then filed a pro se "complaint" in federal district court, challenging the BIA's decision. Because direct review of the BIA's decisions rests exclusively in the courts of appeals, the district court transferred the case to us pursuant to 28 U.S.C. § 1631. <u>See</u> 8 U.S.C.

4

§ 1105a(a) (repealed 1996).**1** Okpa now argues that the BIA erred in applying amended § 212(i) retroactively. In the alternative, he argues that the BIA abused its discretion in failing to grant him a waiver.

II.

We turn first to the question of our jurisdiction. IIRIRA provides two sets of rules governing immigration proceedings. See Lewis v. INS, 194 F.3d 539, 542 n.4 (4th Cir. 1999). The transitional rules apply to aliens who were involved in deportation proceedings initiated prior to April 1, 1997, and were issued a final deportation order more than thirty days after September 30, 1996. See § 309(c)(4), 119 Stat. at 3009-625. The permanent rules apply to all other aliens who were involved in deportation proceedings on or after April 1, 1997. See § 309(a), 119 Stat. at 3009-625. Okpa's case is governed by IIRIRA's transitional rules.

Section 309(c)(4)(E) of the transitional rules provides that "there shall be no appeal of any discretionary decision under . . . Section 212(i)." See 119 Stat. at 3009-626 (emphasis added). In other words, we may review all aspects of the BIA's decision except those that are committed to its discretion by law. See Gonzalez-Torres v. INS, 213 F.3d 899, 901 (5th Cir. 2000); Bernal-Vallejo v. INS, 195 F.3d 56, 59-60 (1st Cir. 1999); Kalaw v. INS, 133 F.3d 1147, 1151 (9th Cir. 1997).**2** Okpa claims that the BIA erred in applying amended § 212(i) retroactively. We have jurisdiction to review this claim because the question of whether a statute applies retroactively is not committed to the BIA's discretion. See Cervantes-Gonzales v. INS, 244 F.3d 1001, 1005 (9th Cir. 2001) (exercising jurisdiction over the identical retroactivity question presented in this case). However, we lack jurisdiction to review Okpa's claim that the BIA abused its discretion in

_____

**1** IIRIRA repealed § 1105a. See § 306(b), 110 Stat. at 3009-612. Okpa, however, is subject to IIRIRA's transitional rules, see infra part II, and § 1105a is still applicable under those rules. See § 309(c)(1)(B), 110 Stat. at 3009-625 ("proceedings (including judicial review thereof) shall continue to be conducted without regard to [the] amendments").

**2** By comparison, IIRIRA's permanent rules state that we may not review "any judgment regarding the granting of relief under section [212(i)]." 8 U.S.C. 1252(a)(2)(B)(i).

5

concluding that his wife would not endure extreme hardship. The question of whether an alien can show extreme hardship is committed to the Attorney General's discretion by statute. See 8 U.S.C. § 1182(i) ("The Attorney General may, in [his] discretion . . . [grant a waiver] . . . if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse . . . ."); see also Cervantes-Gonzalez, 244 F.3d at 1106 (holding that court lacked jurisdiction to review whether the BIA erred in concluding that the alien could not show extreme hardship). Because the decision with respect to whether extreme hardship is established is a discretionary one, we may not review Okpa's abuse of discretion claim.

III.

The INS argues that even if we have jurisdiction over Okpa's retroactivity claim, we should nonetheless decline to reach its merits. According to the INS, the BIA's decision rested on two independent grounds. Specifically, the INS claims that the BIA not only held that Okpa could not show extreme hardship, but that the BIA denied Okpa a waiver "in the ultimate exercise of its discretion." Resp't Supplemental Br. on Jurisdiction at 12. The INS argues that this second ground is unreviewable. Accordingly, the INS claims that there is no need to reach the merits of Okpa's retroactivity claim. However, we read the BIA's decision as only resting on the ground that Okpa could not show extreme hardship. The pertinent part of the BIA's decision states:

> The Immigration Judge denied the respondent's application for a waiver of inadmissibility under section 212(h), in the exercise of discretion. The Immigration Judge found no showing of extreme or emotional hardship to the qualifying relative (his wife) if the respondent is deported. The same analysis applies under section 212(i), as amended. We also find that the respondent failed to establish that discretion is warranted under section 212(i). (citation omitted).

The INS reads the sentence beginning "We also . .." as stating that regardless of whether Okpa can show extreme hardship, he is none-

6

theless not entitled to a waiver. Specifically, the INS claims that the word "also" signals that the BIA was stating an alternative ground for affirming the IJ's decision. However, this sentence read in context merely serves as the conclusion to the BIA's extreme hardship analysis. The BIA noted that the IJ had analyzed Okpa's claim under § 212(h). The BIA stated that the IJ had concluded that Okpa could not show extreme hardship. Next, the BIA reasoned that the IJ's analysis was equally applicable to amended § 212(i). Finally, the BIA concluded by agreeing with the IJ's findings: "We also find that the respondent failed to establish that discretion is warranted under section 212(i)." The word "also" does not signal an alternative holding. Rather, it signals that the BIA, like the IJ, "also" concluded that Okpa could not show extreme hardship. Because the BIA rested solely on the ground that Okpa could not show extreme hardship, we must examine whether the BIA erred in applying amended § 212(i) to his claim.

IV.

We turn then to the merits of Okpa's retroactivity claim. The BIA must apply the "law existing at the time of its review, even if different from the law applied by the IJ." Ortiz v. INS, 179 F.3d 1148, 1156 (9th Cir. 1999). See also Urbina-Mauricio v. INS, 989 F.2d 1085, 1088 n.4 (9th Cir. 1993). The question we are asked to decide is whether Congress intended for amended § 212(i) to apply to cases pending before the BIA at the time of IIRIRA's enactment. In other words, we must determine whether amended § 212(i) was the "law existing at the time of [the BIA's review]." Ortiz, 179 F.3d at 1156. In order to ascertain whether amended § 212(i) applies to pending cases, we first ask "whether Congress has expressly prescribed the statute's [temporal] reach." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). See also Velasquez-Gabriel v. Crocetti, No. 00-1755, ___ F.3d ___, slip op. at 5 (4th Cir. Aug. 22, 2001). "If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect. If so, then in keeping with our `traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." Martin v. Hadix, 527 U.S. 343-52 (1999). See also Velasquez-Gabriel, No. 00-1755, slip op. at 5-6.

7

Congress did not expressly prescribe whether amended § 212(i) applies to pending cases. The section does not contain an effective date, and no generally applicable effective date applies. The legislative history is silent as to the section's effective date. Further, we cannot discern § 212(i)'s effective date by negative implication. <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 330 (1997). In <u>Lindh</u> the Supreme Court was asked to decide whether §§ 101-106 of AEDPA applied to pending cases. These sections had no effective date, but § 107 explicitly applied retroactively. The Court concluded that because § 107 explicitly applied retroactively, the negative implication was that Congress intended for §§ 101-106 only to apply prospectively. <u>See id.</u> In this case, we cannot draw such an inference. Section 212(i) was amended by subtitle C of IIRIRA. Subtitle C contains several provisions with various effective dates.**3** Accordingly, we cannot discern Congress's intent for the effective date of amended § 212(i). <u>See, e.g.</u>, <u>Velasquez-Gabriel</u>, No. 00-1755, slip op. at 7-8 (concluding that Congress's intent cannot be discerned by negative implication because several of IIRIRA's sections contain various effective dates).

Because we cannot discern Congress's intent, we must determine whether the statute has a retroactive effect. "A statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." <u>Landgraf</u>, 511 U.S. at 269. Rather, a statute has retroactive effect when it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." <u>Id.</u> at 280. <u>See also INS v. St. Cyr</u>, 121 S. Ct. 2271, 2290 (2001) (stating that a statute has a retroactive effect when it "attaches new legal consequences to events completed before its enactment"). At oral argument Okpa's counsel could not articulate why the statute would have a retroactive effect as to those aliens who were involved in pending cases. Indeed, the only possible argument is that Okpa would not have filed a fraudulent TPS application if he had known that § 212 would be amended to require a showing of

_____

**3** Subtitle C contains §§ 341 to 353. Sections 341, 344, 350, and 352 explicitly apply prospectively only. Sections 342 and 346 become effective on a particular date. Sections 347, 348, and 351 explicitly apply retroactively, as well as prospectively. Finally, Sections 343, 345, 349, and 353 are silent as to the effective date.

8

extreme hardship. However, in <u>De Osorio v. INS</u>, 10 F.3d at 1034, 1042 (4th Cir. 1993), we rejected a similar argument as to why a statute had a retroactive effect. We stated that an alien could not reasonably rely "on the availability of a discretionary waiver of deportation when choosing to engage in illegal . . . activity." <u>See also Tasios v. Reno</u>, 204 F.3d 544, 551 (4th Cir. 2000). Therefore, the amended statute does not have a retroactive effect, and the BIA properly concluded that the amended statute applies to Okpa's claim. **4**

V.

We conclude that we have jurisdiction to review Okpa's retroactivity claim, but not his abuse of discretion claim. We hold that the BIA did not err in applying amended § 212(i) to his claim. Accordingly, Okpa's petition for review is dismissed for lack of jurisdiction on his abuse of discretion claim and denied with respect to his retroactivity claim.

<u>PETITION DISMISSED IN PART
AND DENIED IN PART</u>

_____

**4** We have considered Okpa's claims that applying amended § 212(i) violates the Ex Post Facto Clause, the Due Process Clause, and the Equal Protection Clause. We find all of these claims to be without merit. Finally, we note that Okpa was not effectively deprived of a right to a hearing even though the law changed while his case was on appeal. <u>See</u> 8 U.S.C. § 1229a. Okpa does not argue that he would have presented any additional evidence or characterized the evidence in a different light if he had known that the IJ was going to apply an extreme hardship standard.

9