**Adaobi Stella OBIOHA, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–2253.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 21, 2005.

Decided Dec. 8, 2005.

402

ARGUED: Jim Tom Haynes, Washington, D.C., for Petitioner. Michael John Frank, United States Department of Justice, Office of Legal Policy, Washington, D.C., for Respondent. ON BRIEF: Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration

Litigation, United States Department of Justice, Washington, D.C., for Respondent.

Before KING and GREGORY, Circuit Judges, and R. BRYAN HARWELL, United States District Judge for the District of South Carolina, sitting by designation.

Petition for review denied and judgment affirmed by published opinion. Judge GREGORY wrote the opinion, in which Judge KING and Judge HARWELL joined.

## OPINION

GREGORY, Circuit Judge.

Adaobi Stella Obioha ("Obioha") challenges the decision of the Board of Immigration Appeals ("BIA") denying her motion to remand. Obioha seeks remand so that she can pursue cancellation of removal as a nonpermanent resident before the Immigration Judge ("IJ"). As an initial matter, we conclude that we possess jurisdiction to review the denial of Obioha's motion to remand. Upon examining the record and the applicable law, we find that the BIA did not abuse its discretion in denying this motion and that Obioha was not denied the due process of law. Therefore, we deny her petition for review and affirm the BIA's decision.

## I.

Obioha was born in Nigeria in 1959. She entered the United States in 1986 to complete her medical residency at a U.S. hospital. She has six children, aged 8 to 18, with her former husband and Nigerian citizen, George Udeozor.

In 1987, while still married to Udeozor, Obioha married U.S. citizen Eric Loyd. On several occasions between 1987 and 1991, Obioha falsely reported to the Immigration and Naturalization Service ("INS") in sworn documents or under penalty of perjury that she had divorced Udeozor and that she had no children. Based upon these misrepresentations, the INS upgraded Obioha's status over time from an alien to an alien relative, and eventually to a lawful permanent resident. Thereafter, Obioha and Loyd divorced, and she resumed her marriage to Udeozor, which continued until their divorce in 2003.

The INS discovered Obioha's fraud in 1999 when she truthfully declared in an application for naturalization that she had six children. On October 12, 1999, the INS commenced removal proceedings through issuance of a notice to appear. The notice charged that Obioha was subject to removal for procuring entry or status by fraud or misrepresentation.

Obioha admitted both the fraud and removability before the IJ. On January 12, 2000, she applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(a), which requires that the alien be "lawfully admitted for permanent residence." At that time, Obioha could have sought cancellation of removal as a nonpermanent resident under 8 U.S.C. § 1229b(b), but chose not to do so.[1] On November 15, 2001, the INS moved to pretermit Obioha's application for relief from removal, arguing that because her continued presence had been achieved through fraud, she was not "law-

---

1. Cancellation of removal is available to nonpermanent residents at the Attorney General's discretion if the alien (1) has been physically present in the United States continuously for at least ten years; (2) has had good moral character during that time period; (3) has not been convicted of certain enumerated offenses; and (4) establishes that removal would result in "exceptional and extremely unusual hardship" to a qualifying relative. 8 U.S.C. § 1229b(b)(1).

fully admitted for permanent residence." On August 13, 2002, the IJ agreed with the INS's position and pretermitted Obioha's application, granting her voluntary departure.

Obioha timely appealed the IJ's decision to the BIA. On January 8, 2003, while Obioha's appeal was still pending, the BIA decided *In re Koloamatangi*, 23 I & N Dec. 548 (BIA 2003), which contained facts very similar to those of Obioha's case. In *Koloamatangi*, the BIA held that an alien who had procured status as a permanent resident through fraud could not qualify for cancellation of removal under 8 U.S.C. § 1229b(a). 23 I & N Dec. at 549. Because it appeared that the alien involved was eligible for cancellation of removal as a non-permanent resident under 8 U.S.C. § 1229b(b), the BIA remanded his case to the IJ to consider that relief. *Id.* at 552.

In light of the *Koloamatangi* decision, Obioha moved to remand her case to the IJ so that she likewise could apply for cancellation of removal as a nonpermanent resident under 8 U.S.C. § 1229b(b). Obioha's one-page motion indicated that *Koloamatangi* cut off her first theory of relief, but the motion did not address any of the reasons why she would be entitled to relief under her new theory. *See* J.A. 9. The Department of Homeland Security ("DHS"), successor to the INS, opposed remand on the basis that Obioha had failed to submit necessary documentation and had not demonstrated prima facie eligibility for relief in her motion.[2] On September 9, 2004, the BIA rendered its decision on Obioha's appeal and motion to remand.

Citing *Koloamatangi*, it adopted and affirmed the IJ's decision to deny cancellation of removal under 8 U.S.C. § 1229b(a). With regard to remand, the BIA denied Obioha's request for two reasons. First, the BIA agreed with the DHS that Obioha's motion had failed to address prima facie eligibility, reasoning that "[i]n her motion, the respondent has not addressed the moral character issue arising from her admitted fraud, nor has she suggested that hardship might occur to a qualifying relative." J.A. 2. Second, the BIA found that "respondent had adequate opportunity to seek such alternative relief below, and she has not provided us with a persuasive reason why she should be permitted now to pursue another application." *Id.* Obioha timely petitioned this Court to review the denial of the motion to remand.

## II.

The threshold issue of this appeal is whether this Court has jurisdiction to review the BIA's denial of Obioha's motion to remand. The Government argues that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, has stripped this Court's ability to review any discretionary decision related to cancellation of removal.[3] IIRIRA's "gate-keeper provision," codified at 8 U.S.C. § 1252(a)(2)(B)(i), provides that "no court shall have jurisdiction to review ... any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b [cancellation of removal], 1229c, or 1255 of this title...." 8 U.S.C. § 1252(a)(2)(B)(i).[4]

---

2. The DHS cited the regulation that provides, "[a] motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1).

3. The Government concedes that we have jurisdiction to review constitutional claims and questions of law under the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, which clarified that such review is permitted. *See* 8 U.S.C. § 1252(a)(2)(D).

4. Because deportations commenced after

Obioha requested remand for the purpose of pursuing cancellation of removal under 8 U.S.C. § 1229b(b). The Government argues that because the effect of denying her motion to remand is to deny her cancellation of removal, the gatekeeper provision bars review. The Fourth Circuit has not yet addressed the full extent of section 1252(a)(2)(B)(i)'s limits on jurisdiction.

 It is quite clear that the gatekeeper provision bars our jurisdiction to review a decision of the BIA to actually deny a petition for cancellation of removal or the other enumerated forms of discretionary relief. *See, e.g., Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002); *Bravo v. Ashcroft*, 341 F.3d 590, 592 (5th Cir.2003). However, neither the BIA nor the IJ ever decided Obioha's request for cancellation of removal as a nonpermanent resident on the merits—her request never got that far. Instead, the BIA cut off her ability to apply for such relief by denying her request to remand. As Obioha correctly points out, the BIA's authority over motions to remand arises from 8 C.F.R. § 1003.2,[5] which is not enumerated under the gatekeeper provision.[6]

 The Government urges us to read 8 U.S.C. § 1252(a)(2)(B)(i) broadly and find that because the ultimate effect of denying Obioha's motion to remand is to preclude her from seeking cancellation of removal under section 1229b(b), this decision constitutes a "judgment regarding the granting of relief under section ... 1229b...." 8 U.S.C. § 1252(a)(2)(B)(i).

Although this interpretation is a plausible reading of the language, several principles of statutory construction counsel us to interpret this jurisdiction-stripping language narrowly. First, there must be a showing of " 'clear and convincing evidence' of a contrary legislative intent" to restrict access to judicial review. *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In addition, there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Finally, courts construe ambiguities in deportation statutes in favor of the alien. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). *See also Iddir v. INS*, 301 F.3d 492, 496–97 (7th Cir.2002) (applying these principles to the gatekeeper provision). Because the gatekeeper language is equally susceptible to a more narrow interpretation, barring review only of merits-based decisions under the enumerated provisions, these principles guide that the narrower reading is appropriate.

In addition, this circuit gave a narrow reading to the gatekeeper provision of IIRIRA's transitional rules. *See Stewart v. INS*, 181 F.3d 587 (4th Cir.1999). In *Stewart*, the court reasoned that the language, "there shall be no appeal of any discretionary decision under section ...

April 1, 1997, we apply the relevant gatekeeper provision of IIRIRA's permanent rules (8 U.S.C. § 1252(a)(2)(B)(i)), rather than that of IIRIRA's transitional rules (IIRIRA § 309(c)(4)(E)). *See* IIRIRA §§ 309(a), 309(c)(4); *Okpa v. INS*, 266 F.3d 313, 317 (4th Cir.2001).

**5.** Section 1003.2(a) provides that "[t]he decision to grant or deny a motion to reopen or

reconsider is within the discretion of the Board...."

**6.** The enumerated provisions instead are: 8 U.S.C. §§ 1182(h) (waiver of inadmissibility), 1182(i) (waiver of inadmissibility), 1229b (cancellation of removal), 1229c (voluntary departure), and 1255 (adjustment of status). 8 U.S.C. § 1252(a)(2)(b)(i).

245 [adjustment of status]," did not bar review of a motion to reopen, even though the purpose of the motion to reopen was to apply for an adjustment of status. *Id.* at 594 (quoting IIRIRA § 309(c)(4)(E)). The court recognized that a broad interpretation of the transitional rule could logically bar review of a decision on reopening. However, the court stated, "we believe the better interpretation of § 309(c)(4)(E) is that it divests courts of jurisdiction only over BIA decisions that address the merits of an alien's request for relief pursuant to those sections." *Id.* at 595. The court continued, "[a] reviewing court, therefore, must examine the *basis for* the BIA's decision rather than the *end result* of the BIA's decision to determine whether the decision is 'under' a section listed in § 309(c)(4)(E) that precludes judicial review." *Id.* (emphasis in original). In Obioha's case, this would mean examining the basis for the denial of the motion to remand, rather than looking to the ultimate effect of preventing cancellation of removal.

Although, as the Government points out, the language of the transitional rules is not identical to that of the permanent rules, we believe that the *Stewart* court's reasoning continues to apply. The operative word of both provisions is "under," which the *Stewart* court focused on in reading the provision to direct that the "basis for" the BIA's decision controlled our ability to review it. *Accord Pilica v. Ashcroft,* 388 F.3d 941, 947 (6th Cir.2004) (applying the *Stewart* construction to the permanent gatekeeper provision). Furthermore, a natural reading of "regarding the granting of relief" is consistent with the interpretation that it refers to a decision to grant relief on the merits of the provisions that follow. Therefore, we interpret the gatekeeper provision's language to preclude review only where the basis for the discretionary decision addresses the merits of an enumerated provision.

The other circuits have similarly concluded that 8 U.S.C. § 1252(a)(2)(B)(i) bars review only of discretionary decisions on the merits of the enumerated sections. *See Prado v. Reno,* 198 F.3d 286, 290–91 (1st Cir.1999) (gatekeeper provision did not bar review of the dismissal of a motion to reopen to seek adjustment of status); *Medina–Morales v. Ashcroft,* 371 F.3d 520, 527 (9th Cir.2004) (court could review denial of a motion to reopen to seek adjustment of status); *Subhan v. Ashcroft,* 383 F.3d 591, 594 (7th Cir.2004) (permitting review of a denial of a request for a continuance to seek adjustment of status); *Pilica,* 388 F.3d at 948 (court could review a denial of a motion to remand to apply for an adjustment of status); *Guerra–Soto v. Ashcroft,* 397 F.3d 637, 640 (8th Cir.2005) (allowing review of a denial of a motion to reopen to seek cancellation of removal); *Manzano–Garcia v. Gonzales,* 413 F.3d 462, 468 (5th Cir.2005) (court could review denial of a motion to reopen to seek adjustment of status).

The Government relies on *Rodriguez v. Ashcroft,* 253 F.3d 797 (5th Cir.2001) (per curiam), a Fifth Circuit case decided under the transitional rules, to support its contention that accepting jurisdiction over the BIA's denial of Obioha's motion to remand would be no different from accepting jurisdiction over the BIA's decision to deny cancellation of removal. The *Rodriguez* court held that it could not review a motion to reopen an application for suspension of deportation. The BIA had denied the motion because the alien's new evidence failed to establish that he would suffer "extreme hardship," as required to receive suspension of deportation. *Id.* at 800.

A close examination of *Rodriguez* reveals that it does not contradict our hold-

ing. Because it was based on the sufficiency of the evidence of extreme hardship, the denial of reopening that the *Rodriguez* court was asked to review actually "addressed the 'merits of an alien's request for relief pursuant to' a provision of the INA established as discretionary by § 309(c)(4)(E)." *Id.* (quoting *Stewart*, 181 F.3d at 595). The *Rodriguez* court thus recognized the inconsistency of allowing review where the ground for the BIA's denial was a discretionary determination denying relief on the merits of the underlying claim. It held:

> It is axiomatic that if we are divested of jurisdiction to review an original determination by the BIA that an alien has failed to establish that he would suffer extreme hardship if deported, we must also be divested of jurisdiction to review the BIA's denial of a motion to reopen on the ground that the alien has still failed to establish such hardship.

*Id.*

Thus, because the BIA made a discretionary decision on the merits of an enumerated provision, the fact that it did so through denying a motion to reopen did not save appellate jurisdiction. Where, however, the basis for the decision we are asked to review is not the discretionary merits of a section enumerated by the gatekeeper provision, *Rodriguez* does not conflict with our holding that we have jurisdiction to review it.[7] *Accord Pilica*, 388 F.3d at 947–48 (distinguishing *Rodriguez* on this basis).

In the present case, the BIA denied Obioha's motion to remand on two distinct bases: (1) Obioha had failed to seek cancellation of removal as a nonpermanent resident when she had the opportunity to do so before the IJ, and (2) Obioha failed to present the elements of prima facie eligibility for cancellation of removal in her motion.[8] We find that we have jurisdiction over both grounds. On the first ground, the "basis for" denial was Obioha's procedural failure, which is unrelated to the merits of a discretionary decision on cancellation of removal. The second ground similarly is not based upon the discretionary merits of cancellation of removal. Rather, because Obioha had failed to address the elements of a prima facie case in her motion itself, the BIA found it insufficient to demonstrate eligibility and declined to examine the evidence of prima facie eligibility elsewhere in the record. The basis for this ground was therefore a

---

7. The Fifth Circuit recently found jurisdiction to review the denial of a motion to reopen to seek adjustment of status based on the ground that the movant had failed to introduce previously unavailable, material evidence, which is unrelated to the merits. *Manzano–Garcia*, 413 F.3d at 468. It therefore clarified that it, too, distinguishes between merits-based decisions and decisions on other grounds.

8. The Government seems to assume that the BIA did not find Obioha's motion deficient and looked beyond the one-page motion to determine that the evidence otherwise before it did not establish prima facie eligibility. However, the admittedly brief language of the BIA decision demonstrates that this assumption is incorrect. The BIA states, *"In her motion,* the respondent has not addressed the moral character issue arising from her admitted fraud, nor has she suggested that hardship might occur to a qualifying relative." J.A. 2 (emphasis added). Moreover, had the BIA examined the evidence already in the record as the Government assumes, it would have seen that Obioha did present evidence which "addressed" moral character (five sworn letters of recommendation, J.A. 220–31) and "suggested" hardship to a qualifying relative (a licensed clinical social worker's assessment that extreme and unusual hardship would beset Obioha's children, J.A. 131). Finally, this portion of the BIA opinion indicated its agreement with the DHS, which had argued the deficiency of Obioha's motion on several bases, including the motion's failure to demonstrate prima facie eligibility. *See* J.A. 6–7.

deficiency of the motion to remand, not a discretionary decision on the merits.

If not an abuse of discretion, either one of the BIA's grounds for denial would be sufficient on its own to require this Court to affirm the BIA decision. Because we find, for the reasons discussed below, that the BIA did not abuse its discretion in denying Obioha's petition on the basis that she had an adequate opportunity to pursue relief below, we do not reach the question of whether the BIA abused its discretion with respect to its failure to look beyond Obioha's motion to remand. Accordingly, we express no opinion as to whether we would find the BIA's decision not to consider the evidence of prima facie eligibility already in the record to be an abuse of discretion.

### III.

 We review the BIA's decision to deny Obioha's motion to remand for an abuse of discretion. *See Stewart*, 181 F.3d at 595 (citing *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992)).

 Remand is available in two contexts before the BIA: when an alien seeks reconsideration of a decision or when an alien seeks to have the proceedings reopened.[9] Although these motions are often treated interchangeably, a request for reconsideration is based upon "errors of fact or law in the prior Board decision," 8 C.F.R. § 1003.2(b)(1), whereas a request to reopen proceedings results from changed circumstances and specifically contemplates that an alien will do so "for the purpose of submitting an application for relief," 8 C.F.R. § 1003.2(c)(1).

Obioha requested remand not so that the IJ could reevaluate its prior decision under 8 U.S.C. § 1229b(a), but so that she could pursue a new theory of relief under 8 U.S.C. § 1229b(b). Therefore, her motion to remand is properly viewed as a motion to reopen.

 The regulations regarding a motion to reopen provide, in pertinent part:

nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.

8 C.F.R. § 1003.2(c)(1).

Here, as the BIA noted, Obioha had the opportunity to pursue relief as a nonpermanent resident under 8 U.S.C. § 1229b(b) as an alternative ground for relief before the IJ. Obioha has never suggested that the facts relevant to her entitlement to such relief changed. Indeed, Obioha's counsel admitted at oral argument that Obioha chose to pursue cancellation of removal only as a lawful permanent resident under 8 U.S.C. § 1229b(a) because lawful permanent residents are subject to a comparatively easier standard.

Instead, the only "circumstance[ ] that [has] arisen subsequent" Obioha suggests is the BIA's *Koloamatangi* decision, which made clear that the IJ's decision was correct. Obioha, however, can point to no authority that would require the BIA to reopen proceedings when an alien wishes

---

9. Motions to remand are mentioned in reference to both: a motion to reconsider or reopen "that is filed while an appeal is pending before the BIA, may be deemed a motion to remand for further proceedings before the Immigration Judge...." 8 C.F.R. § 1003.2(b)(1) (motions to reconsider); 8 C.F.R. § 1003.2(c)(4) (motions to reopen).

to pursue a new legal theory after it becomes clear that the first one will not succeed.[10] To the contrary, the Supreme Court has noted that "[Section 1003.2] is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition." *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (quoting *INS v. Jong Ha Wang*, 450 U.S. 139, 144 n. 5, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981)). Therefore, where the regulations direct that reopening should not be granted when an alien has neglected her opportunity to pursue relief, it is not unreasonable for the BIA to deny reopening where the only change in the circumstances is intervening adverse precedent.

Obioha also argues that because the BIA chose to reopen proceedings in the similar *Koloamatangi* situation, it was an abuse of discretion not to do the same for her. This argument fails to account for the discretionary nature of the decision to reopen a case. "If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive." *Abudu*, 485 U.S. at 108, 108 S.Ct. 904 (quoting *Jong Ha Wang*, 450 U.S. at 144 n. 5, 101 S.Ct. 1027). Because the BIA exercised its discretion to grant reopening in one situation does not mean, ipso facto, that the BIA must make the same discretionary allowance here.

Therefore, because Obioha chose to forgo her first opportunity to seek 1229b(b) cancellation of removal, we cannot say that

it was arbitrary or unreasonable for the BIA to decline to give her a second chance. Accordingly, we find that the BIA did not abuse its discretion in denying Obioha's motion to remand.

## IV.

 Obioha also suggests that the denial of her motion to remand violated her due process rights. The gatekeeper provision explicitly preserves our jurisdiction to review constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(D). A claim that the BIA denied an alien due process is reviewed de novo. *Rusu v. INS*, 296 F.3d 316, 320 (4th Cir.2002).

Obioha argues that because no court evaluated her request for cancellation of removal as a nonpermanent resident on the merits and because the BIA provided improper grounds for denying her motion to remand, she was denied due process. Obioha, however, did have the opportunity to seek cancellation of removal as a nonpermanent resident, which she chose not to pursue. Furthermore, an alien does not have a legal entitlement to discretionary relief. *See Smith v. Ashcroft*, 295 F.3d 425, 429–30 (4th Cir.2002) (because alien had no legal entitlement to discretionary relief, due process was not violated). Allowing Obioha a second opportunity to seek this relief was solely within the discretion of the BIA, which, as we have already determined, it did not abuse. We therefore cannot say that the BIA's decision denied Obioha the due process of the law.

10. Nor did *Koloamatangi* represent a change in the applicable law. The BIA noted in that opinion that its holding was fully consistent with BIA precedent on the meaning of "lawfully admitted for permanent residence." 23 I & N Dec. at 549–50. Moreover, the case that Obioha relied on to hold to the contrary

interpreted a different provision in which "has previously been admitted," rather than "lawfully admitted" was the operative phrase. *In re Ayala–Arevalo*, 22 I & N Dec. 398, 401–02 (BIA 1998). *See also Koloamatangi*, 23 I & N Dec. at 551 & n. 4 (distinguishing *Ayala–Arevalo* ).

## V.

Because Obioha failed to seek cancellation of removal as a nonpermanent resident when she had the opportunity to do so before the IJ, she has failed to show that the BIA either abused its discretion in denying her motion to remand or denied her the due process of law. Accordingly, we deny the petition for review and affirm the BIA's decision.

*PETITION FOR REVIEW DENIED AND JUDGMENT AFFIRMED*