**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1485**

SERVANDO GONZALEZ GALVAN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 4, 2021                    Decided: July 27, 2021

Before NIEMEYER and KEENAN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Petition for review denied by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Senior Judge Traxler joined.

**ARGUED:** Abby Holland, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Micah S. Engler, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Nicolas Sansone, Supervising Attorney, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Jeffrey Bossert Clark, Acting Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Genevieve M. Kelly, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

BARBARA MILANO KEENAN, Circuit Judge:

Servando Gonzalez Galvan, a native and citizen of Mexico, petitions for review of a final order of removal entered by the Board of Immigration Appeals (the Board). The Board affirmed the holding of the immigration judge (IJ) that Gonzalez Galvan failed to prove one of the statutory eligibility requirements for cancellation of removal under 8 U.S.C. § 1229b. In particular, the IJ held that Gonzalez Galvan had failed as a matter of law to prove under 8 U.S.C. § 1229b(b)(1)(D) that his removal would impose an "exceptional and extremely unusual hardship" on his United States citizen children.

We conclude that this statutory standard of "exceptional and extremely unusual hardship" presents a mixed question of law and fact, which we retain jurisdiction to review under the Supreme Court's recent decision in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020). However, upon our review of the record, we conclude that the Board and the IJ did not err in determining that Gonzalez Galvan failed as a matter of law to prove this statutory eligibility requirement for cancellation of removal. Accordingly, we deny Gonzalez Galvan's petition.

I.

Gonzalez Galvan entered the United States in February 2003 on a six-month nonimmigrant visa, but has remained in this country since the expiration of that visa. Prior to his detention, Gonzalez Galvan resided in Silver Spring, Maryland with his wife, a citizen of Mexico without legal immigration status, and their four children, who are all United States citizens. Gonzalez Galvan was employed as a general manager at a local

2

Dunkin Donuts store for 16 years and, more recently, has performed various construction jobs. He also was an active member of his church and regularly helped his children with their many activities.

In 2006 and again in 2019, Gonzalez Galvan was convicted of driving under the influence of alcohol. Following his second conviction, after the Department of Homeland Security issued him a Notice to Appear, Gonzalez Galvan conceded removability but applied for cancellation of removal. Among other things, Gonzalez Galvan contended that his removal would result in "exceptional and extremely unusual hardship" for his four children.

The IJ held a hearing on Gonzalez Galvan's application, at which Gonzalez Galvan, his wife, and his eldest daughter, Amy, testified. At the hearing, counsel for Gonzalez Galvan argued that the financial and emotional stress of his removal would harm his children and greatly disrupt their lives. Gonzalez Galvan testified that his younger children cried both at home and in school and stated that Amy suffered from a "distraction disorder."

Gonzalez Galvan's wife, Herminia Perez Lagunas, testified in greater detail regarding the impact that Gonzalez Galvan's removal would have on their children. She explained that because Gonzalez Galvan had been the family's main source of income, his absence during his detention had required her to work longer hours, which had impacted her ability to take care of the children and to give them necessary emotional support. She also stated that Amy had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and suffers from anxiety. According to Perez Lagunas, the eldest son, Aldo, had become more reserved, working to hide his emotions both at home and in school.

3

Additionally, she was concerned that the children would not be able to participate in many of their established activities because of the financial strain caused by Gonzalez Galvan's absence. However, Perez Lagunas testified that, in Gonzalez Galvan's absence, both Amy and Aldo had accepted more responsibility in helping to care for their siblings and in supporting the family.

Finally, Amy testified regarding her medical conditions and the impact that her father's removal would have on all the children. She informed the IJ that she had been previously diagnosed with Generalized Anxiety Disorder (GAD) and had been receiving treatment since before her father's detention, and that her anxiety levels had increased as a result of his detention. Amy observed that her other siblings also had been presenting signs of heightened anxiety. She explained that because of her father's detention, her financial and caretaking responsibilities for the family had increased, and that she was worried that her options for college will be more limited.

After this hearing, the IJ issued an oral decision. While the IJ found that all the witnesses were credible, he denied Gonzalez Galvan's application for cancellation of removal. The IJ found that Gonzalez Galvan met the temporal and good moral character criteria for cancellation and had not been convicted of any disqualifying offenses. However, the IJ concluded that Gonzalez Galvan failed as a matter of law to prove that his removal would cause "exceptional and extremely unusual hardship" for his United States citizen children. More specifically, the IJ stated that the family would face "significant forms of hardship," including increased anxiety among the children, but concluded that the hardship was of "the type . . . that would normally be expected to result from a parent's

4

deportation." Finally, the IJ indicated that if Gonzalez Galvan had met all the statutory eligibility requirements, including that of "exceptional and extremely unusual hardship," the IJ would have exercised his discretion to grant the request for cancellation of removal.

Gonzalez Galvan appealed from the IJ's decision to the Board. The Board, in a single-member decision, affirmed the IJ's denial of Gonzalez Galvan's application and expressly adopted the reasoning in the IJ's opinion. The Board stated that "[t]here is no clear error in the [IJ's] findings of fact, and we agree with the conclusion that the respondent did not establish eligibility for cancellation of removal." The Board emphasized that it made its determination "based on all of the medical conditions." Gonzalez Galvan filed a timely petition for review.[1]

II.

In expressly adopting the IJ's reasoning and exclusively relying on that rationale, the Board has placed the IJ's opinion before this Court for review. Accordingly, the IJ's opinion is the final removal order that we review. *Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014); *cf. Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th Cir. 2021) (noting that the Court may review any portion of an IJ's opinion expressly adopted by the Board).

This appeal raises two separate issues. First, the government argues that we lack jurisdiction to review the IJ's determination on the hardship eligibility requirement,

---

[1] Gonzalez Galvan filed a motion to stay his removal with his petition for review. This Court denied that motion and Gonzalez Galvan has since been removed.

5

contending that the IJ's decision was discretionary in nature.[2]  Second, Gonzalez Galvan advances the contrary contention that the IJ's determination on the hardship requirement was not a discretionary decision but, instead, resolved a question of law that we may review on appeal.  Therefore, advancing the merits of his appeal, Gonzalez Galvan argues that the IJ erred in concluding that his evidence failed as a matter of law to meet the statutory requirement of "exceptional and extremely unusual hardship."  We will address these issues in turn.

### A.

We begin with the government's challenge to our jurisdiction to consider Gonzalez Galvan's petition for review.  Citing 8 U.S.C. § 1252(a)(2)(B)(i), the government argues that the Immigration and Nationality Act (INA) prohibits judicial review of an IJ's discretionary decision denying cancellation of removal.  The government maintains that because cancellation of removal is a form of discretionary relief, the considerations on which that decision is based likewise are not subject to judicial review.  *See Obioha v. Gonzales,* 431 F.3d 400, 405 (4th Cir. 2005) (noting that courts lack jurisdiction to review the Board's decision to deny a petition for cancellation of removal).  Thus, according to the government, the IJ's resolution of the statutory eligibility requirement whether Gonzalez Galvan's children would face "exceptional and extremely unusual hardship" was merely a discretionary component of the IJ's larger decision to deny cancellation of removal.  The government similarly asserts that judicial review would require us to reweigh

---

[2] The government also filed a motion to dismiss the appeal raising the same jurisdictional argument.  For the reasons stated below, we deny the government's motion.

the evidence, usurping a function exclusive to the IJ.  We disagree with the government's position.

Under the INA, the Attorney General "*may* cancel removal" of an applicant who meets four statutory criteria: 1) that the applicant has been physically present in the United States for at least ten continuous years, 2) that the applicant had been a person "of good moral character" during that ten-year period, 3) that the applicant had not committed certain enumerated offenses, and 4) that the applicant "establishes that removal would result in exceptional and extremely unusual hardship to the [applicant's citizen or lawful permanent resident] spouse, parent, or child[ren]."  8 U.S.C. § 1229b(b)(1) (emphasis added).  However, even if the applicant satisfies these four statutory requirements, the Attorney General[3] still retains the discretion to deny an application for cancellation of removal.  *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021); *cf. Argueta v. Barr*, 970 F.3d 532, 533 (4th Cir. 2020) (describing cancellation of removal as discretionary relief).

Under 8 U.S.C. § 1252(a)(2)(B), federal courts lack jurisdiction to review the Attorney General's denial of discretionary relief.  The statute specifically strips federal courts of jurisdiction to review the denial of cancellation of removal under 8 U.S.C. § 1229b.  *Id.* § 1252(a)(2)(B)(i).  Notably, however, Section 1252(a)(2)(D) provides that

---

[3] While the statute authorizes the Attorney General to rule on applications for cancellation of removal, the Attorney General has delegated that authority to IJs and to the Board.  *See* 8 C.F.R. §§ 1003.10, 1003.1 (delegating the duties of the Attorney General under the INA to IJs and the Board).  Therefore, any reference in this opinion to the Attorney General also encompasses IJs and the Board.

7

this limitation on judicial review shall not "be construed as precluding review of constitutional claims or questions of law."

As discussed above, Section 1229b frames the ultimate decision whether to grant cancellation of removal as a discretionary decision by the Attorney General. *Id.* § 1229b(a) ("The Attorney General *may* cancel removal . . . ." (emphasis added)). Thus, when an applicant meets the statutory eligibility requirements for cancellation of removal, we plainly lack jurisdiction to review the ultimate discretionary action taken on his application. *Id.* § 1252(a)(2)(B)(i); *see also Obioha*, 431 F.3d at 405.

Here, however, the IJ based his decision on his conclusion that, as a matter of law, Gonzalez Galvan failed to prove the statutory eligibility requirement that his removal would cause his children "exceptional and extremely unusual hardship." *See* 8 U.S.C. § 1229b(b)(1)(D). We therefore proceed to answer the jurisdictional question whether the IJ's determination of that eligibility requirement in Section 1229b(b)(1)(D) presents a question of law that we may review under Section 1252(a)(2)(D), or is merely a component of the final, unreviewable discretionary decision to grant or deny cancellation of removal under Section 1252(a)(2)(B)(i).

Our answer to this question is governed by the Supreme Court's recent decision in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), an immigration case in which the Board ordered the petitioner's removal from the United States.[4] *Id.* at 1067. The petitioner

---

[4] The Supreme Court in *Guerrero-Lasprilla* consolidated two independent cases that had been separately adjudicated by the Board. *Id.* at 1067. For the sake of clarity, we will only reference a single petitioner in our discussion of *Guerrero-Lasprilla*, although the Supreme Court's decision applied to both petitioners.

did not file a timely request to reopen the removal proceedings, but asked the Board to equitably toll the filing deadline because he had exercised "due diligence" in attempting to reopen the proceedings. *Id.* at 1067-68. The Board denied the petitioner's request. On a petition for review to the Fifth Circuit, the court denied Guerrero-Lasprilla's petition on the ground that the question "whether an alien acted diligently in attempting to reopen removal proceedings for purposes of equitable tolling is a[n] [unreviewable] factual question." *Id.* at 1068 (quoting *Guerrero-Lasprilla v. Sessions*, 737 F. App'x 230, 231 (2018) (per curiam) and *Ovalles v. Sessions*, 741 F. App'x 259, 261 (2018) (per curiam)).

The Supreme Court disagreed with the Fifth Circuit, holding that the appeals court had jurisdiction to review the petitioner's challenge because it qualified as a "question of law" under the statutory exception of Section 1252(a)(2)(D). *Id.* at 1067. In reaching this conclusion, the Court characterized the determination of "due diligence" as presenting a "mixed" question of law and fact. *Id.* at 1067-69. The Court explained that nothing in the statutory language of Section 1252(a)(2)(D) "precludes the conclusion that Congress used the term 'questions of law' to refer to the application of a legal standard to settled facts."[5] *Id.* at 1068. And, importantly, the Court did not restrict its holding to whether the issue of

---

[5] Prior to *Guerrero-Lasprilla*, the Board already had treated the determination of hardship under Section 1229b(b)(1)(D) as presenting a mixed question of law and fact. *In re Gamero Perez*, 25 I. & N. Dec. 164, 165 (B.I.A. 2010) (describing the hardship determination as the "application of the pertinent legal standards" to factual findings). Likewise, before *Guerrero-Lasprilla*, we recognized in dicta that the Board's review of an IJ's hardship determination involved a de novo application of the law to determine whether the facts found by the IJ amounted to "exceptional and extremely unusual hardship." *Massis v. Mukasey*, 549 F. 3d 631, 636 n.6 (4th Cir. 2008).

9

"due diligence" presented a "question of law" under Section 1252(a)(2)(D), but held more generally that "the statutory term 'questions of law' includes the application of a legal standard to established facts."[6] *Id.* at 1072.

Four of our sister circuits have addressed the impact of *Guerrero-Lasprilla* on federal appellate courts' jurisdiction to review the Board's "exceptional and extremely unusual hardship" determination under Section 1229b(b)(1)(D). Both the Third and the Tenth Circuits have concluded that the hardship determination required under this statutory provision is discretionary in nature because the determination requires fact-finding by the adjudicator and a subjective assessment of the alleged hardship. *Galeano-Romero v. Barr*, 968 F.3d 1176, 1181-84 (10th Cir. 2020); *Hernandez-Morales v. Att'y Gen.*, 977 F.3d 247, 249 (3d Cir. 2020). The Third Circuit further stated that "a disagreement about weighing hardship factors is a discretionary judgment call, not a legal question." *Hernandez-Morales*, 977 F.3d at 249. Similarly, the Tenth Circuit noted that the appellate court's only task would be to review the facts to determine whether the court should "reach a different result than the Board did." *Galeano-Romero*, 968 F.3d at 1184.

The Fifth and Sixth Circuits, however, have concluded that hardship determinations made under 8 U.S.C. § 1229b(b)(1)(D) are "the type of mixed questions [of law and fact]

---

[6] While the Court was considering the jurisdictional review bar in Section 1252(a)(2)(C), instead of Section 1252(a)(2)(B), this distinction has no impact on the applicability of *Guerrero-Lasprilla* to this case. *See Trejo v. Garland*, --- F.4th---, 2021 WL 2767440, at *8 (5th Cir. 2021) (noting that the due diligence standard at issue in *Guerrero-Lasprilla* was "no less subjective than the application of the hardship standard" (quoting *Singh*, 984 F.3d at 1153)). Both jurisdiction-stripping provisions are subject to the limitation in Section 1252(a)(2)(D), which permits judicial review of constitutional and legal questions.

that [courts] have jurisdiction to review after *Guerrero-Lasprilla*." *Singh*, 984 F.3d at 1154; *see also Trejo v. Garland*, --- F.4th ---, 2021 WL 2767440, at \*8 (5th Cir. 2021) (noting that the determination on eligibility for cancellation of removal is not a discretionary decision and, thus, is reviewable). The Sixth Circuit explained that the discretionary language in the statute attaches only to the final decision whether to grant cancellation of removal and does not impact the eligibility determination of "exceptional and extremely unusual hardship." *Singh*, 984 F.3d at 1151; *see also Trejo*, 2021 WL 2767440, at \*8-9 (same). The court therefore held that the Board's decision applying the statutory hardship standard is not a discretionary determination but instead resolves a mixed question of law and fact, namely, whether the IJ's factual findings satisfy the level of hardship mandated by the statute.[7] *Singh*, 984 F.3d at 1152-54.

We agree with the Fifth and Sixth Circuits' approach, which we think is aligned more closely with the Supreme Court's reasoning in *Guerrero-Lasprilla*. As we emphasized above, the Supreme Court in *Guerrero-Lasprilla* did not restrict its analysis to whether the issue of "due diligence" presented a "question of law," but instead broadly interpreted the "question of law" exception in Section 1252(a)(2)(D) as generally encompassing mixed questions of law and fact. *Guerrero-Lasprilla*, 140 S. Ct. at 1067, 1072.

---

[7] The Eleventh Circuit, in dicta, also has characterized statutory eligibility requirements that are preconditions for discretionary immigration relief as non-discretionary determinations subject to judicial review. *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1280 (11th Cir. 2020) (en banc), *cert. granted*, ---S. Ct.---, 2021 WL 2637834 (2021) (No. 20-979).

In our view, the language of Section 1229b(b)(1) is plain and unambiguous. Although the ultimate decision whether to grant cancellation of removal is discretionary in nature, the four statutory eligibility requirements do not speak of discretion. As the Sixth Circuit noted in *Singh*, although the Board may deny relief even when a petitioner proves all four eligibility requirements, "the statute does not use the word 'may' when delineating the eligibility requirements." 984 F.3d at 1151. Instead, if a petitioner fails to prove any of the four eligibility requirements, the Attorney General cannot consider granting discretionary relief.

The statutory term "exceptional and extremely unusual hardship" in Section 1229b(b)(1)(D) does not refer to "hardship" generally but specifies a precise and elevated standard that the IJ must apply to the findings of fact reflected in the record. And, like all mixed questions of law and fact, the legal component articulated in this statutory standard is applied only after all underlying factual issues have been resolved. Reflecting its legal, rather than factual, character, this requirement of "exceptional and extremely unusual hardship" is a precondition of cancellation of removal, rather than merely a factor to be weighed by the Board in exercising its ultimate discretion whether to grant such relief. Thus, like the mixed question of law and fact involving "due diligence" addressed by the Supreme Court in *Guerrero-Lasprilla*, the statutory term "exceptional and extremely unusual hardship" is reviewable as a "question of law" under Section 1252(a)(2)(D) because it involves the application of a legal standard to settled facts. *Guerrero-Lasprilla*, 140 S. Ct. at 1069; *see also Trejo*, 2021 WL 2767440, at *8 (noting that the due diligence standard at issue in *Guerrero-Lasprilla* was "no less subjective than the application of the

12

hardship standard" (quoting *Singh*, 984 F.3d at 1153)). This determination is separate and distinct from the Board's ultimate discretionary determination whether to grant or deny an application for cancellation of removal after an applicant meets the four statutory eligibility requirements. *Cf. Obioha,* 431 F.3d at 405 (explaining that 8 U.S.C. § 1252(a)(2)(B)(i) bars the Court's "jurisdiction to review a decision of the [Board] to actually deny a petition for cancellation of removal or the other enumerated forms of discretionary relief").

B.

Having concluded that we retain jurisdiction to review Gonzalez Galvan's claim, we turn to consider the merits of his argument. Gonzalez Galvan challenges the IJ's determination that he failed as a matter of law to prove that his children would suffer "exceptional and extremely unusual hardship" as a result of his removal from the United States. More specifically, Gonzalez Galvan contends that, when applying the statutory standard to the factual record, the IJ failed to consider the full impact that his removal would have on his children's mental health. Alternatively, Gonzalez Galvan argues generally that the IJ failed to offer an adequate explanation for denying Gonzalez Galvan's application for cancellation of removal. We disagree with Gonzalez Galvan's position.

As explained above, an applicant for cancellation of removal must meet four statutory requirements: 1) the individual has been physically present in the United States for at least ten continuous years, 2) the individual had been a person "of good moral character" during that ten-year period, 3) the individual had not committed certain enumerated offenses, and 4) the individual "establishes that removal would result in exceptional and extremely unusual hardship to the alien's [citizen or lawful permanent

13

resident] spouse, parent, or child[ren]." 8 U.S.C. § 1229b(b)(1). Because the IJ found that Gonzalez Galvan had satisfied the first three predicates, only the "exceptional and extremely unusual hardship" requirement is at issue in this case.

Under our limited jurisdiction, we may not review the IJ's factual findings related to the hardship determination. *See Guerrero-Lasprilla*, 140 S. Ct. at 1073. Therefore, we accept as true the IJ's settled factual findings. However, we review de novo the application of those facts to the statutory legal standard. *See Diaz de Gomez v. Wilkinson*, 987 F.3d 359, 363 (4th Cir. 2021) (applying de novo review to questions of law); *Guerrero-Lasprilla*, 140 S. Ct. at 1072 (describing mixed questions of law and fact as questions of law under the INA); *see also U.S. Dep't of Health & Hum. Servs. v. Smitley*, 347 F.3d 109, 116 (4th Cir. 2003) (stating that courts review de novo legal conclusions derived from established facts). Accordingly, we consider here only whether the IJ erred in holding that Gonzalez Galvan's evidence failed as a matter of law to satisfy the statutory standard of "exceptional and extremely unusual hardship."

The Board's precedent requires that an IJ consider the ages, health, and other circumstances of the United States citizen or lawful permanent resident family members in determining whether the applicant has established "exceptional and extremely unusual hardship." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (B.I.A. 2001). To meet this evidentiary burden, the applicant must demonstrate that the hardship facing the family is "'substantially' beyond the ordinary hardship that would be expected when a close family member" is removed. *Id.* at 62.

14

Referencing this "very high" evidentiary burden, the IJ explained that Gonzalez Galvan's children would not face a level of hardship different from that any family would face upon the removal of a parent who is the family's primary wage earner. The IJ explained that he considered the medical records, including the children's "feelings of anxiety," "possible depression," and Amy's diagnosis of ADHD before concluding that these were not physical or mental conditions that would satisfy the statutory hardship standard. The IJ also referenced the financial burdens that the family would face, the emotional impact that the father's absence would have on the children, and the children's reduced opportunities for a college education and various activities that they will not be able to pursue.

From our review of the record, we conclude that the IJ applied the correct statutory standard, considered all the evidence, and adequately explained the reasons for his ruling.[8] While we do not minimize the hardship Gonzalez Galvan's family will face because of his removal, we find that the present record does not support Gonzalez Galvan's assertion that the IJ erred in his application of the statutory standard to the settled facts in this case.

---

[8] To the extent that Gonzalez Galvan argues that a diagnosis of GAD establishes per se "exceptional and extremely unusual hardship," we reject that argument. While the unpublished Board decisions Gonzalez Galvan presents cite severe cases of GAD, anxiety, and depression as factors favoring a finding of "exceptional and extremely unusual hardship," these decisions do not establish a per se rule that a specific mental health diagnosis is necessarily sufficient to satisfy the hardship requirement. The only published guidance requires the IJ to consider the totality of the children's circumstances, *see In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63-64, including medical diagnoses. Because the IJ in the present case considered the anxiety issues of Amy and Aldo, we conclude that the IJ adequately addressed the argument concerning Amy's diagnosis of GAD.

III.

In sum, we hold that an IJ's determination whether an applicant has satisfied the statutory requirement of "exceptional and extremely unusual hardship" to establish eligibility for cancellation of removal presents a mixed question of law and fact subject to judicial review. We therefore exercise jurisdiction over this case, but ultimately conclude that the IJ did not err in holding that Gonzalez Galvan failed to prove the hardship requirement of Section 1229b(b)(1)(D) to qualify for cancellation of removal. Accordingly, we deny Gonzalez Galvan's petition for review.

*PETITION FOR REVIEW DENIED*