**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**No. 20-1924**

_____

JAVIER CHAVEZ GONZALEZ,

  Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

  Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued:  September 21, 2021                    Decided:  October 20, 2021

_____

Before FLOYD, THACKER, and HARRIS, Circuit Judges.

_____

Petition for review granted in part and denied in part; vacated and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Floyd and Judge Harris joined.

_____

**ARGUED:**  Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Sara J. Bayram, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Rebekah G. Grafton, FAY GRAFTON NUNEZ, Raleigh, North Carolina, for Petitioner.  Brian M. Boynton, Acting Assistant Attorney General, John W. Blakeley, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

THACKER, Circuit Judge:

In August 2016, Javier Chavez Gonzalez ("Petitioner") was granted deferred action on his removal from the United States pursuant to the Deferred Action for Childhood Arrivals program ("DACA"). As a result of his conviction for a misdemeanor in North Carolina, the United States Department of Homeland Security ("DHS") terminated Petitioner's grant of deferred action, and Petitioner was immediately placed in removal proceedings.

However, during the course of his proceedings before the immigration judge ("IJ"), DHS officially restored Petitioner's DACA grant of deferred action. As a result, Petitioner asked the IJ to either administratively close his case, terminate the removal proceedings, or grant a continuance based on his mother's pending application to be a legal permanent resident ("LPR"). The IJ denied all requests for relief, and Petitioner appealed to the Board of Immigration Appeals ("BIA").

While the matter was pending in the BIA, Petitioner's mother obtained LPR status, and Petitioner filed a motion to remand with the BIA. The BIA affirmed the IJ's decision and denied the motion to remand. Relying on *Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462 (A.G. 2018), the BIA reasoned that neither the IJs nor the BIA possess the authority to terminate removal proceedings. The BIA also found administrative closure and a continuance to be inappropriate based on the speculative possibility of Petitioner's mother earning LPR status. The BIA denied the motion to remand because Petitioner failed to present prima facie evidence that his mother's LPR status would qualify him for cancellation of removal. Petitioner timely filed this petition for review.

2

We hold today that the IJs and BIA possess the inherent authority to terminate removal proceedings, abrogating *Matter of S-O-G- & F-D-B-*. We likewise conclude the BIA improperly denied Petitioner's request for administrative closure because it failed to address Petitioner's specific argument based on his DACA status. However, we find no error in the IJ's decision to deny Petitioner's request for a continuance and the BIA's decision to deny the motion to remand. We therefore grant the petition for review in part, deny it in part, vacate the BIA's decision, and remand for proceedings consistent with this opinion.

I.

Factual and Procedural History

A.

The DACA Program

In 2012, DHS created the DACA program for "certain young people who were brought to this country as children." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1901 (2020) (internal quotation marks omitted). Through the program, noncitizens who satisfy certain criteria -- i.e., noncitizens who came to the United States before age 16 and were under age 31 in 2012; have continuously resided here since 2007; are current students, have completed high school, or are honorably discharged veterans; have not been convicted of any serious crimes; and do not threaten national security or public safety -- could receive renewable grants of "deferred action" for renewable two-year terms. *Id*. "This commendable exercise in administrative discretion" may be exercised "at any stage of the administrative process." *Reno v. American-Arab*

3

*Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (quoting Gordon, Mailman & Yale-Loehr, *Immigration Law and Procedure* Vol. 6, § 72.03(2)(h) (1998)).  Those granted such relief "are also eligible for work authorization and various federal benefits."  *Dep't of Homeland Sec.*, 140 S. Ct. at 1901.  However, noncitizens are not eligible to receive relief pursuant to DACA if they have been "convicted of multiple misdemeanors, a single significant misdemeanor, or any felony offense."  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058 (9th Cir. 2014).

From around 2013 to 2018, DHS automatically terminated a grant of deferred action and placed DACA recipients in removal proceedings upon the issuance of a Notice to Appear ("NTA").  But in February 2018, the Central District of California issued a preliminary injunction to a nationwide class of DACA recipients who have had or will have their DACA grant and employment authorization revoked without notice or an opportunity to respond, prohibiting DHS from automatically terminating deferred action upon an issuance of an NTA without notice and opportunity to respond.  *See Inland Empire-Immigrant Youth Collective v. Nielsen*, No. 17-cv-2048, 2018 WL 1061408, at *2 (C.D. Cal. Feb. 26, 2018) ("*Inland Empire*").

B.

The IJ Proceedings

Petitioner entered the United States from Mexico on October 20, 1998, when he was three years old, and he has not left the United States since.  On August 10, 2016, Petitioner was granted deferred action pursuant to DACA for a two-year period, which he has continually renewed every two years.  Prior to *Inland Empire*, on October 6, 2017,

4

Petitioner pled guilty to misdemeanor possession of drug paraphernalia in North Carolina state court. Thereafter, DHS terminated Petitioner's grant of deferred action, and three days later, Petitioner was placed in removal proceedings, without being given notice or an opportunity to respond.

Less than a month after *Inland Empire*'s nationwide injunction, on March 22, 2018, Petitioner appeared for his initial hearing before the IJ. Petitioner conceded he was inadmissible for being present in the United States without being admitted or paroled, but he advised the IJ that DHS had revoked his grant of deferred action without notice, and that, as a result, he intended to request administrative closure. DHS responded that the *Inland Empire* injunction "doesn't operate to resolve removal *proceedings* or affect removal *proceedings* in any fashion." A.R. 80–81 (emphases supplied).[1] Rather, DHS opined that the injunction "only operates to control whether or not an alien can actually be removed." *Id.* at 81. Therefore, DHS stated that it would "not agree[] to administrative[ly] clos[e]" Petitioner's removal proceedings. *Id.* Petitioner also pointed out that his mother had a pending application for LPR status, and if his mother achieved LPR status, Petitioner could apply for cancellation of removal.

On March 30, 2018, about a week after Petitioner's initial hearing, DHS officially restored Petitioner's DACA grant of deferred action pursuant to *Inland Empire*. At that point, Petitioner again asked the IJ to either administratively close his case or terminate the

[1] Citations to the "A.R." refer to the Administrative Record submitted by the parties in this agency review appeal.

proceedings. In the alternative, Petitioner sought a continuance or administrative closure because his mother had submitted an application to become an LPR, which was still pending.[2]

On April 12, 2018, the IJ held Petitioner's final hearing. The IJ denied Petitioner's request for a continuance pursuant to 8 C.F.R. § 1003.29 for "failure to show good cause" because Petitioner was not at that time eligible for any relief from removal. A.R. 63; *see id.* at 86 ("You made a motion for a continuance which I denied because [Petitioner] doesn't have any current relief."). Even though Petitioner's grant of deferred action had been restored, the IJ reasoned that Petitioner remained subject to his removability charge, and thus denied the motion to terminate the proceedings. The IJ also denied the request for administrative closure because Petitioner was not eligible for "immediately foreseeable" relief. *Id.* at 90.

The IJ then issued summary orders denying the requests for termination, continuance, and closure and ordered Petitioner removed to Mexico. Petitioner timely appealed to the BIA.

---

[2] By doing so, Petitioner hoped to file a request for cancellation of removal. The Immigration and Nationality Act provides, "The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien," inter alia, "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, *parent*, or child, *who is* a citizen of the United States or *an alien lawfully admitted for permanent residence*." 8 U.S.C. § 1229b(b)(1)(D) (emphases supplied).

## C.

### The BIA Proceedings

While Petitioner's BIA appeal was pending, in May 2018, Attorney General Jefferson Sessions issued a decision holding that IJs and the BIA did not have the general authority to administratively close cases. *See Matter of Castro-Tum*, 27 I. & N. Dec. 271, 272 (A.G. 2018). Four months after that, Attorney General Sessions issued another decision holding that IJs and BIA also lacked the general authority to terminate proceedings. *See Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462, 463 (A.G. 2018).

After filing his appeal with the BIA, but before Petitioner's appeal was decided, two significant events occurred. First, this court overruled *Castro-Tum*, relying on two regulations that bestow the IJ and BIA authority to administratively close cases -- 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii). *See Romero v. Barr*, 937 F.3d 282, 292–94 (4th Cir. 2019). And second, Petitioner's mother attained LPR status.

As a result, Petitioner argued to the BIA that the IJ should have either terminated or administratively closed the proceedings because his grant of deferred action had been restored. Alternatively, Petitioner argued that the IJ should have administratively closed or continued the proceedings, pending the adjudication of his mother's application for LPR status, to allow him to apply for cancellation of removal. Petitioner also filed a motion to remand based on the change in his mother's status.

On August 6, 2020, the BIA denied Petitioner's appeal in a single member, unpublished decision. The BIA addressed Petitioner's claims de novo without adopting the IJ's decision.

7

As to the denial of Petitioner's request to terminate his proceedings, the BIA explained, "[W]e agree that the [IJ] lacks the authority to terminate these proceedings." A.R. 3 (citing *Matter of S-O-G-*, 27 I. & N. Dec. 462). In addition, the BIA reasoned that Petitioner's deferred action "does not confer any legal status." *Id*. And because Petitioner did not contest that he is removable as charged and did not assert that his status had been adjusted or changed, the BIA concluded "the ground of removability was properly sustained and termination of proceedings was not warranted." *Id*.

As to Petitioner's request for administrative closure, the BIA recognized that *Castro-Tum* had been abrogated by this court in *Romero*; therefore, it recognized that the IJ and BIA had general authority to administratively close cases. Even so, the BIA reasoned that administrative closure "is not to be used where an event is speculative, where the event causes unreasonable delay, or where collateral events may be potentially irrelevant to removal proceedings." A.R. 4. In this vein, the BIA also noted that Petitioner's motion "at the time it was presented to the [IJ], was based on speculative relief before [United States Citizenship and Immigration Services] and that closure could be for a potentially indefinite period of time." *Id*. The BIA further noted that Petitioner "did not establish whether his mother was likely to obtain adjustment of status, and that he would meet the hardship requirement for cancellation of removal." *Id*. As a result, the BIA denied Petitioner's motion for administrative closure.

As to Petitioner's request for a continuance, the BIA affirmed the IJ's denial, reasoning that Petitioner did not establish good cause, "given the speculative nature of the

8

relief sought and potentially indeterminate period of time for [Petitioner] to be eligible for any relief before the [IJ]." A.R. 4.

Finally, the BIA denied Petitioner's motion to remand, reasoning that, despite the fact that Petitioner's mother is now a qualifying relative for Petitioner to claim cancellation of removal, Petitioner "has not supported his motion with other evidence establishing his prima facie eligibility for cancellation of removal, such as evidence that his mother would suffer exceptional and extremely unusual hardship in the event of his removal." A.R. 4 (citing *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992)).

## II.

Petitioner filed a petition for this court's review of the BIA's decision on August 27, 2020. We possess jurisdiction pursuant to 8 U.S.C. § 1252(a). Where, as here, the BIA issues a stand-alone opinion upon de novo review of the case without adopting the immigration judge's opinion, this court reviews solely the BIA's decision and does not separately consider the IJ's decision. *See Martinez v. Holder*, 740 F.3d 902, 908 & n.1 (4th Cir. 2014); *see also Asentic v. Sessions*, 873 F.3d 974, 980 (7th Cir. 2017) ("[W]hen the [BIA] has issued a stand-alone decision, even if that decision endorses the [IJ]'s reasoning, we review only the [BIA]'s decision.").

## III.

### Termination of Removal Proceedings

### A.

Attorney General Sessions concluded in *Matter of S-O-G-* that IJs and the BIA may only exercise the powers delegated to them by statute or federal regulation, and that no

9

statute or regulation confers to IJs and the BIA the general authority to terminate proceedings. *See* 27 I. & N. Dec. 462, 465–68 (A.G. 2018). Therefore, Attorney General Sessions concluded that neither IJs nor the BIA have the inherent power to terminate proceedings after they have begun. *See id.* at 463, 467. Here, the BIA relied on *Matter of S-O-G-* to reject Petitioner's request to terminate his removal proceedings. But for his part, Petitioner contends that the immigration courts have the inherent authority to terminate removal proceedings, and this court should overrule the Attorney General's decision in *Matter of S-O-G-*.

B.

Questions concerning the authority of the immigration courts are legal questions reviewed de novo, while "afford[ing] appropriate deference" to the BIA's interpretation of the Immigration and Nationality Act ("INA") and attendant regulations. *Romero v. Barr*, 937 F.3d 282, 290 (4th Cir. 2019). Generally, "if a regulation is ambiguous, the Court gives substantial deference to an agency's interpretation of its own regulation pursuant to *Auer v. Robbins*, 519 U.S. 452, 461 (1997)." *Id*. However, *Auer* deference "can arise only if a regulation is genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). And a regulation can only be deemed "genuinely ambiguous if uncertainty exists even after a court has resorted to all the standard tools of interpretation, including consideration of 'text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on.'" *Romero*, 937 F.3d at 291 (quoting *Kisor*, 139 S. Ct. at 2415) (alterations and some internal quotation marks omitted).

C.

Petitioner argues that certain immigration regulations "confer the general authority to *administratively close* proceedings," and therefore, "they [also] provide the general authority to *terminate* proceedings." Pet'r's Br. 19 (emphases supplied) (citing *Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019)). To digest this argument, we start with the language of the immigration regulations.

Petitioner relies on 8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii). The former, which pertains to IJs, provides:

> In deciding the individual cases before them, . . . immigration judges shall exercise their independent judgment and discretion *and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases.*

8 C.F.R. § 1003.10(b) (emphasis supplied). And the latter, which pertains to the BIA, similarly provides, "[A] panel or [BIA] member to whom a case is assigned *may take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case.*" 8 C.F.R. § 1003.1(d)(1)(ii) (emphasis supplied).

Despite this broad language, in *Matter of S-O-G-*, Attorney General Sessions concluded, "[T]he relevant statutes and regulations do not give immigration judges the discretionary authority to dismiss or terminate removal proceedings after those proceedings have begun." 27 I. & N. Dec. at 466. The Attorney General listed other regulations that he believed bestow authority upon the immigration courts to terminate proceedings: i.e., dismissing proceedings where the Notice to Appear was improvidently issued or

11

circumstances changed such that a continuation was no longer in the best interest of the Government, *see* 8 C.F.R. §§ 239.2(a)(6)–(7), 1239.2(c); terminating removal proceedings to permit the noncitizen to proceed to a final hearing on a pending naturalization application, *see* 8 C.F.R. § 1239.2(f); and terminating removal proceedings where DHS has failed to sustain the charges of removability, *see* 8 C.F.R. § 1240.12(c). But Attorney General Sessions noted that "in *every other case*, the removal hearing shall be completed as promptly as possible." *Matter of S-O-G-*, 27 I. & N. Dec. at 466 (quoting 8 C.F.R. § 1239.2(f)) (emphasis in *S-O-G-*). Attorney General Sessions concluded, "[C]onsistent with my opinion in *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018), [IJs] have no inherent authority to terminate or dismiss removal proceedings." *Id.* at 463.

Additionally, in *Castro-Tum*, Attorney General Sessions addressed another regulation, 8 C.F.R. § 1240.1(a)(1)(iv), which provides that IJs can "take any other action consistent with applicable law and regulations as may be appropriate" -- language similar to sections 1003.10(b) and 1003.1(d)(1)(ii). *Castro-Tum*, 27 I. & N. Dec. at 285 (quoting 8 C.F.R. § 1240.1(a)(1)(iv)). Relying on *Castro-Tum*, the Attorney General rejected the idea that this language bestowed upon IJs the power to terminate removal proceedings. *See Matter of S-O-G-*, 27 I. & N. Dec. at 466. In this regard, Attorney General Sessions explained:

> Given that [8 C.F.R. § 1240.1(a)(1)(iv)] does not permit the [IJ] to suspend indefinitely a respondent's removal proceedings, *see Castro-Tum*, 27 I. & N. Dec. at 285, the provision similarly cannot be read to provide the authority to end removal proceedings entirely. Such an action would both exceed the authorized bases for dismissal or termination in the regulations and conflict with the limited authority to dismiss or

12

terminate removal proceedings under 8 C.F.R. § 1239.2. The INA requires that "[a]t the conclusion of the proceeding the immigration judge *shall* decide whether an alien is removable from the United States." 8 U.S.C. § 1229a(c)(1)(A) (emphasis added). Consistent with that authorization, the immigration regulations give enforcement officials, not immigration judges, general discretionary authority to cancel a Notice to Appear before removal proceedings commence or to move for the dismissal of removal proceedings after they have begun. *See* 8 C.F.R. § 1239.2(a), (c); *see also* 8 C.F.R. § 1239.1.

*Id.* at 466–67 (some citations omitted). Attorney General Sessions did not address section 1003.10(b) or section 1003.1(d) in *Matter of S-O-G-.*

D.

Petitioner asserts that we should abrogate *Matter of S-O-G-* and conclude that IJs and the BIA possess the inherent authority to terminate removal proceedings. For the following reasons, we agree.

1.

We first consider the deference owed to the Attorney General's interpretation in *Matter of S-O-G-.* In doing so, we need look no further than our *Romero* decision. Interpreting the very same regulations at issue here -- sections 1003.10(b) and 1003.1(d)(1)(ii) -- *Romero* stated, "[T]he plain language of [the regulations] unambiguously confers upon IJs and the BIA the general authority to administratively close cases such that an *Auer* deference assessment is not warranted." 937 F.3d at 292. We explained:

Applying the standard tools of interpretation -- namely, a reading of the text of the relevant regulations -- we clearly discern from the text that the authority of IJs and the BIA to administratively close cases is conferred by the plain language

13

of 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii). *See Kisor*, 139 S. Ct. at 2414–15. Both regulations provide that IJs and the BIA "may take *any action* . . . appropriate and necessary for the disposition" of the case. 8 C.F.R. §§ 1003.1(d)(1)(ii) & 1003.10(b) (emphasis added). First, if we give the word "any" its plain meaning, that language grants IJs and the BIA broad discretion in how to manage and resolve cases because "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). Given this, "*any* action . . . for the disposition of" the case is read most naturally to encompass actions of whatever kind appropriate for the resolution of a case. 8 C.F.R. §§ 1003.1(d)(1)(ii) & 1003.10(b) (emphasis added). In turn, this would plainly include docket management actions such as administrative closure, which often facilitate . . . case resolution.

*Id.* at 292 (some citations omitted). In *Romero*, we also reasoned that the plain meaning given to the word "any" in other cases is given a broad interpretation. *See id.* at 292–93 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008) (concluding that the use of the word "any" to modify "'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind"); *Massachusetts v. EPA*, 549 U.S. 497, 529 (2007) ("The definition embraces all airborne compounds of whatever stripe, and underscores that intent through the repeated use of the word 'any.'"); *Brogan v. United States*, 522 U.S. 398, 400 (1998) ("By its terms, 18 U.S.C. § 1001 covers 'any' false statement -- that is, a false statement 'of whatever kind.'"); *Citizens' Bank of La. v. Parker*, 192 U.S. 73, 81 (1904) ("The word *any* excludes selection or distinction. It declares the exemption without limitation." (emphasis in original)); *Int'l All. of Theatrical & Stage Emps. v. NLRB*, 334 F.3d 27, 34 (D.C. Cir. 2003) (noting that the use of "any" to modify

14

the term "employee" "signals that 'employee' should receive its broadest statutory definition").

There is no reason to reach a different result as to the unambiguity of the regulations with regard to termination of removal proceedings. In *Romero*, we read the phrase "'*any action*'" to include "docket management actions . . . which often facilitate . . . case resolution," such as administrative closure. 937 F.3d at 292 (quoting 8 C.F.R. §§ 1003.1(d)(1)(ii), 1003.10(b)) (emphasis in *Romero*). Termination of proceedings certainly falls within this court's reading of "any action"; indeed, termination actually *ends* a proceeding rather than merely "facilitat[ing]" its end. *See Matter of S-O-G-*, 27 I. & N. Dec. at 466 (referring to "end[ing] removal proceedings entirely" as "an action"). Therefore, per *Romero*, no deference is due Attorney General Sessions in his view of the immigration laws and regulations in this regard.

2.

As set forth in *Romero*, we interpreted the "expansive language" of sections 1003.10(b) and 1003.1(d)(1)(ii) and held that "the authority of IJs and the BIA to administratively close cases is conferred by the plain language." 937 F.3d at 292. Thus, we viewed the language of these regulations as encompassing "actions of whatever kind appropriate for the resolution of a case." *Id.* Termination of removal proceedings is certainly an "action[] of whatever kind"; indeed, as stated above, the Attorney General admitted as much in *Matter of S-O-G-* itself. *See* 27 I. & N. Dec. at 466 (referring to "end[ing] removal proceedings entirely" as "an action"). Thus, pursuant to *Romero*, the regulations clearly encompass the "action" of termination of removal.

15

The Government's arguments to the contrary do not hold up. In arguing that the IJ and BIA lack inherent authority to terminate proceedings and that *Matter of S-O-G-* should stand, the Government first relies on the idea that "once DHS . . . initiate[s] proceedings, an immigration judge 'shall' hold removal proceedings and must adjudicate the alien's removability." Resp't's Br. 24. In turn, the Government relies on 8 U.S.C. § 1229a(c)(1)(A), which provides, "At the conclusion of the proceeding, the [IJ] *shall decide* whether an alien is removable from the United States." *Id.* (emphasis supplied). But the requirement that an IJ "decide" whether a noncitizen is removable does not dictate or otherwise limit the actions an IJ may take after making that determination. And it certainly does not forbid a termination or delay of "the proceeding." *Id*. Indeed, there are other circumstances under which it is appropriate for the immigration courts to stop or pause removal proceedings. *See, e.g.*, 8 C.F.R. §§ 239.2(a)(6)–(7); 1239.2(c) (Government can move for dismissal of the proceedings, and the IJ can dismiss proceedings without prejudice, where the Notice to Appear was improvidently issued or circumstances changed such that a continuation was no longer in the best interest of the Government); 8 C.F.R. § 1239.2(f) (IJ can terminate removal proceedings to permit the immigrant to proceed to a final hearing on a pending naturalization application).

The Government also notes that §§ 1003.10(b) and 1003.1(d)(1)(ii) only authorize IJs and the BIA to take action "consistent with their authorities under the [INA] and regulations," but of the regulations authorizing termination and dismissal, "none [allow] [IJs] or the [BIA] a general, discretionary authority to terminate removal proceedings." Resp't's Br. 25–26 (internal quotation marks omitted). In *Romero*, we declined to address

whether the phrase "consistent with their authorities . . ." constituted an independent limitation on the authority conferred by sections 1003.10(b) and 1003.1(d)(1)(ii). 937 F.3d at 293 n.11. But we fail to see how the general power to terminate proceedings is "[in]consistent" with the authorities bestowed by the INA. 8 C.F.R. §§ 1003.10(b), 1003.1(d)(1)(ii). We have found no provisions stating that the IJ or BIA *cannot* terminate removal proceedings, and the Government does not cite to any.

The Attorney General's decision in *Matter of S-O-G-* is therefore in conflict with the plain meaning of section 1003.10(b) and 1003.1(d)(1)(ii) and must be abrogated.

3.

Even assuming the plain language of the regulations is ambiguous and implicates *Auer* deference, the Government's position fails.

To receive *Auer* deference the "agency's reading must still be reasonable." *Kisor*, 139 S. Ct. at 2415 (internal quotation marks omitted). Even then, "'not every reasonable agency reading' should be accorded deference because a court must still 'make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight.'" *Romero*, 937 F.3d at 291 (quoting *Kisor*, 139 S. Ct. at 2416). This inquiry "'does not reduce to any exhaustive test,' but does rely on a number of 'especially important markers.'" *Id.* (quoting *Kisor*, 139 S. Ct. at 2416). The agency's interpretation of its own regulation, for example, "must be its 'authoritative or official position, rather than any more ad hoc statement not reflecting the agency's views'" and "must reflect the 'fair and considered judgment' of the agency, in contrast to those based

17

on 'post hoc rationalizations' and 'convenient litigating positions.'" *Id.* (quoting *Kisor*, 139 S. Ct. 2416–17) (alterations omitted).

Looking to the character and context of the Government's litigating position -- in stark contrast to its recent regulatory position explained below -- we are quite frankly puzzled that the Government currently stands in support of Attorney General Sessions's decision in *Matter of S-O-G-*, particularly in light of the fact that *Matter of S-O-G-* relies heavily on *Castro-Tum*, which is no longer good law.

To begin with, this court has overruled *Castro-Tum* in *Romero*, in which we relied on the broad language of 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii) to hold that the immigration courts possess the authority to administratively close cases. Indeed, the fact that *Castro-Tum* has been overruled should not only begin the analysis here, but it should definitively end it.

But, beyond the fact that *Castro-Tum* is now defunct, Attorney General Garland no longer takes the position set forth in *Castro-Tum* and has since disavowed the idea that the IJs and BIA cannot administratively close proceedings. In *Matter of Cruz-Valdez*, Attorney General Garland decided, "Because *Castro-Tum* departed from long-standing practice, it is appropriate to overrule that opinion in its entirety and restore administrative closure" authority to the agency. *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 329 (A.G. 2021). In doing so, Attorney General Garland noted "three courts of appeals have rejected *Castro-Tum*" and held that administrative closure is "'plainly within an [IJ]'s authority' under Department of Justice regulations." *Id.* at 328 (citing *Arcos Sanchez v. Att'y Gen. U.S. of Am.*, 997 F.3d 113, 121–22 (3d Cir. 2021); *Meza Morales v. Barr*, 973 F.3d 656, 667 (7th

18

Cir. 2020) (Barrett, J.); *Romero*, 937 F.3d at 292). Indeed, "[o]nly one court of appeals has upheld *Castro-Tum*." *Id.* (citing *Hernandez-Serrano v. Barr*, 981 F.3d 459, 464 (6th Cir. 2020). "[B]ut even that court subsequently ruled that [IJs] and the [BIA] do have authority to grant administrative closure in order to permit a noncitizen to apply for a provisional unlawful presence waiver." *Id.* (citing *Garcia-DeLeon v. Garland*, 999 F.3d 986, 991–93 (6th Cir. 2021)). Attorney General Garland's position on administrative closure in *Matter of Cruz-Valdez* (and the reasoning behind it) calls into question the Government's position in this matter and *Matter of S-O-G-* that IJs and the BIA do not have the inherent authority to terminate proceedings.[3]

4.

Having decided the IJs and BIA possess the inherent authority to terminate immigration proceedings, we hereby abrogate the Attorney General's decision in *Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462 (A.G. 2018). The remaining "limitation in the text of §§ 1003.10(b) and 1003.1(d)(1)(ii) on the term 'any action' is that the circumstances be 'appropriate and necessary'" for IJs and the BIA to terminate proceedings. *Romero*, 937 F.3d at 293. "One does not need to open up a dictionary in order to realize the capaciousness" of the phrase "appropriate and necessary." *Michigan v. EPA*, 135 S. Ct.

---

[3] In any event, Attorney General Sessions's construction of the immigration regulations ignores their plain language. *See Kisor*, 139 S. Ct. at 2417 ("[A]n agency's reading of a rule must reflect 'fair and considered judgment' to receive *Auer* deference" (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). As explained, sections 1003.10(b) and 1003.1(d)(1)(ii) use extremely broad language giving discretion to the immigration courts to take appropriate "action[s]" to dispose of a case, and no other regulations forbid the agency from terminating removal proceedings.

2699, 2707 (2015). And it remains true that "IJs and the BIA possess broad discretion in how to manage their cases." *Romero*, 937 F.3d at 294. It is up to the agency, then, to determine whether in Petitioner's case, termination is an "appropriate and necessary" action. Because the BIA failed to recognize its (and the IJ's) authority to make such determination, we are constrained to remand for consideration of the "appropriate and necessary" inquiry.[4]

E.

Therefore, because sections 1003.10(b) and 1003.1(d)(1)(ii) grant authority to the IJ and BIA to terminate removal proceedings -- and in fact, such a holding is consistent with both *Romero* and Attorney General Garland's decision in *Cruz-Valdez* -- we remand to the BIA for further proceedings consistent with that holding. Specifically, the immigration courts can now determine whether the DACA grant of deferred action is

---

[4] To the extent the Government argues that, even if the BIA possessed the authority to terminate Petitioner's proceedings, it did not abuse its discretion in denying Petitioner's request to terminate because his legal status did not change when he attained deferred status pursuant to DACA, we reject this argument. It is clear the BIA first and foremost "agree[d]" that the IJ "lack[ed] authority to terminate these proceedings." A.R. 3. Its analysis is wrapped up in that premise, presupposing that if Petitioner's legal status had been adjusted and/or DHS did not prove Petitioner was removable, then the IJ *would* have authority to terminate. And on this point, it is hard to swallow the way the Government argues that Petitioner's legal status as "removable" has not changed based on his award of deferred action, but then, when arguing the futility of remand on the administrative closure issue, it states: "[W]hile a grant of administrative closure would prevent DHS from removing [Petitioner] from the United States, *DHS is already prevented from removing him* given his DACA status." Resp't's Br. 43 (emphasis supplied). The Government cannot have it both ways.

20

"appropriate and necessary for the disposition" of Petitioner's case. 8 C.F.R. §§ 1003.10(b), 1003.1(d)(1)(ii).

IV.

Administrative Closure

Petitioner next challenges the BIA's rejection of his request for administrative closure without specifically addressing DACA as a basis for his request. The Government admits, "in upholding the denial of administrative closure, the [BIA] did not mention [Petitioner]'s DACA status." Resp't's Br. 40. The Government also admits, "No one disputes that the agency in its exercise of discretion may, and has granted, administrative closure to some DACA recipients." *Id.* at 42; *see also* Pet'r's Br. 34 & Exs. A, B (providing cases where IJs have terminated proceedings against DACA recipients who, like Petitioner, were improperly placed in removal proceedings after *Inland Empire*). Despite these admissions, however, the Government contends remand would be futile because "[t]he agency was aware that [Petitioner] had DACA status at the time it adjudicated his administrative closure request," and Petitioner's "DACA status does not overcome any of the agency's bases for denying administrative closure." Resp't's Br. 40; *see also id.* at 41 ("DACA does not disturb [Petitioner]'s undisputed removability.").

Again, we agree with Petitioner. "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Thus, when "a BIA order does not demonstrate that the agency has considered an issue, 'the proper course, except in rare circumstances, is to remand to the agency for

21

additional investigation or explanation.'" *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)).

The Government does not dispute that the BIA did not mention DACA in rejecting Petitioner's request. Furthermore, the Government admits that in some cases, the agency will (and has) granted administrative closure based on DACA. The Supreme Court has even cited approvingly a treatise stating that when an immigrant is granted deferred action, "no action will thereafter be taken to proceed against [him], even on grounds normally regarded as aggravated." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (quoting C. Gordon, S. Mailman, & S. Yale-Loehr, *Immigration Law and Procedure* § 72.03 (2)(h) (1998)). Therefore, colorable arguments can be made that administrative closure is appropriate and necessary.

Therefore, upon remand, the BIA must address Petitioner's DACA-based administrative closure argument.

V.

Request for Continuance

Petitioner next contends that the IJ abused its discretion in denying Petitioner's request for a continuance in order to allow him to apply for cancellation of removal based on his mother's then-pending LPR application. An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. "Whether to grant a motion to continue deportation proceedings is within the sound discretion of the IJ and is reviewed for abuse of discretion only." *Onyeme v. INS*, 146 F.3d 227, 231 (4th Cir. 1998). Thus, we must uphold the denial of a continuance "unless it was made without a rational explanation, it

22

inexplicably departed from established policies, or it rested on an impermissible basis, e.g., invidious discrimination against a particular race or group." *Id.* (internal quotation marks omitted); *see also Lendo v. Gonzales*, 493 F.3d 439, 441 (4th Cir. 2007).

In affirming the IJ's denial of Petitioner's motion to continue, the BIA explained that at the time Petitioner sought the continuance from the IJ, his mother had not yet attained LPR status. As a result, the continuance would have been for a "potentially indeterminate period of time" and the relief sought was of a "speculative nature." A.R. 4. This is a permissible reason to deny a continuance. In fact, this scenario fits neatly into our decision in *Lendo v. Gonzales*, where we held that the IJ did not abuse her discretion in refusing to continue removal proceedings to await a decision on the petitioner's wife's labor certification application, and the petitioner was not eligible for adjustment of status when he sought the continuance. *See* 493 F.3d at 441–42; *see also Oyneme*, 146 F.3d at 232 (no abuse of discretion where "numerous contingencies" had to occur before noncitizen could obtain the relief he sought but had not yet applied for).

Therefore, because the IJ's decision was not without rational explanation, did not inexplicably depart from established policies, or did not rest on an impermissible basis, we deny Petitioner's petition for review with regard to this continuance request.

VI.

Motion to Remand

Finally, Petitioner contends that the BIA erred in declining to remand his case so that he could apply for cancellation of removal based on his mother's newly-awarded LPR

23

status. The INA provides, "The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien" --

> (A)   has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B)   has been a person of good moral character during such period;
>
> (C)   has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
>
> (D)   establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, *parent*, or child, *who is* a citizen of the United States or an alien *lawfully admitted for permanent residence*.

8 U.S.C. § 1229b(b)(1) (emphases supplied). On this point, Petitioner contends, "[A]fter Petitioner's mother acquired permanent residence while his case was on appeal, the BIA misapplied its own precedent in *Matter of Coelho*, 20 I. & N. Dec. 464 (BIA 1992), in denying his motion to remand[.]" Pet'r's Br. 47; *see also id.* at 56.

We normally review the denial of a motion to remand for abuse of discretion, *see Obioha v. Gonzales*, 431 F.3d 400, 408 (4th Cir. 2005), but here, Petitioner makes a legal argument invoking de novo review, *see Marynenka v. Holder*, 592 F.3d 594, 600 (4th Cir. 2010). Nonetheless, under either standard, Petitioner's argument fails. *See Tairou v. Whitaker*, 909 F.3d 702, 706 (4th Cir. 2018) (noting that the BIA "abuses its discretion in making an error of law").

To begin, Petitioner's motion is not so much a motion to remand as a motion to reopen:

24

> Remand is available in two contexts before the BIA: when an alien seeks reconsideration of a decision or when an alien seeks to have the proceedings reopened. Although these motions are often treated interchangeably, a request for reconsideration is based upon "errors of fact or law in the prior Board decision," 8 C.F.R. § 1003.2(b)(1), whereas *a request to reopen proceedings results from changed circumstances and specifically contemplates that an alien will do so "for the purpose of submitting an application for relief,"* 8 C.F.R. § 1003.2(c)(1).

*Obioha*, 431 F.3d at 408 (emphasis supplied); *see also* 8 C.F.R. § 1003.2(c)(1) (motion to reopen can be granted based "on the basis of circumstances that have arisen subsequent to the hearing"). Here, Petitioner's "changed circumstance[]" is his mother's new LPR status, which will enable him to apply for cancellation of removal. *Obioha*, 431 F.3d at 408. In this way, Petitioner's request is a classic example of a motion to reopen.

Turning to Petitioner's argument that the BIA misapplied its own precedent in *Matter of Coelho*, that decision provides:

> Where a motion to remand simply articulates the remedy requested by an appeal, we treat it as part of the appeal and do not require it to conform to the standards for consideration of motions. However, where a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions.

20 I. & N. Dec. 464, 471 (BIA 1992). Relying on *Coelho*, Petitioner attempts to argue that his motion is a true "motion to remand" because it merely "articulates the remedy requested by an appeal." Pet'r's Br. 58. But in actuality, the BIA was correct that Petitioner is basing his argument on the changed circumstance of his mother's status, and therefore, he would need to meet the requirements for motions to reopen.

25

One of these requirements is that the motion be "supported by affidavits or other evidentiary material," which is "material that was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Petitioner concedes that he did not present any evidence of hardship, which is one of the requirements for cancellation of removal. *See Gonzalez Galvan v. Garland*, 6 F.4th 552, 555 (4th Cir. 2021) (for cancellation of removal, petitioner must prove that his removal would impose an "exceptional and extremely unusual hardship" on his United States citizen or LPR family member, pursuant to 8 U.S.C. § 1229b(b)(1)(D)). As such, the BIA did not abuse its discretion or commit an error of law in relying on *Matter of Coelho* or in denying Petitioner's motion to remand.

We note, however, that on remand, Petitioner may choose to renew his request for cancellation of removal based on his mother's LPR status. We express no opinion on the merits or procedural propriety of any such request.

VII.

For these reasons, we grant the petition for review with regard to Petitioner's termination of removal and administrative closure arguments. We otherwise deny the petition. We vacate and remand for further proceedings consistent with this opinion.

*PETITION GRANTED IN PART, DENIED IN PART;*
*VACATED AND REMANDED*