**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1943**

PATRICIA GARCIA CABRERA,

       Petitioner,

   v.

MERRICK B. GARLAND, Attorney General,

       Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 21, 2021              Decided: January 6, 2022

Before MOTZ, QUATTLEBAUM, and RUSHING, Circuit Judges.

Petition for review granted; vacated and remanded to the Board of Immigration Appeals for further proceedings by published opinion. Judge Motz wrote the opinion, in which Judge Quattlebaum concurred. Judge Rushing wrote an opinion concurring in the judgment.

**ARGUED:** Melody Busey, DEVINE & BEARD LAW OFFICE, Charleston, South Carolina, for Petitioner. Sherease Rosalyn Pratt, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Mark J. Devine, DEVINE & BEARD LAW OFFICE, Charleston, South Carolina, for Petitioner. Jeffrey Bossert Clark, Acting Assistant Attorney General, Sabatino F. Leo, Senior Litigation Counsel, Office of

Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

DIANA GRIBBON MOTZ, Circuit Judge:

This petition arises out of an immigration judge's (IJ) refusal (affirmed by the Board of Immigration Appeals (BIA)) to continue the deportation proceedings of a movant that the IJ himself recognized was likely to obtain a U visa from the United States Citizenship and Immigration Services (USCIS). For the reasons that follow, we hold that the BIA and IJ abused their discretion in denying the motion for a continuance, vacate the BIA's order, and remand the case to the BIA for further proceedings consistent with this opinion.

I.

On July 24, 2014, Patricia Garcia Cabrera, then a 35-year-old native and citizen of Mexico, legally entered the United States on a B-2 visa, which authorized her to remain in the United States until January 23, 2015. She overstayed the visa without authorization.

On December 27, 2015, while Garcia Cabrera resided in South Carolina, her boyfriend physically assaulted her in front of her young child. Garcia Cabrera contacted the police. The responding officer found her with physical injuries consistent with domestic abuse, and Garcia Cabrera's child told the officer that the man had grabbed Garcia Cabrera and choked her. The police arrested Garcia Cabrera's boyfriend and charged him with criminal domestic violence; Garcia Cabrera aided the police in prosecuting him.

Garcia Cabrera's efforts assisting law enforcement rendered her eligible to apply for a U visa. U visas are available to noncitizens who have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" and who have "been helpful, [are] being helpful, or [are] likely to be helpful" to authorities investigating or prosecuting that crime. 8 U.S.C. § 1101(a)(15)(U). Before filing a U visa application,

3

an applicant must obtain a certification from the relevant law enforcement authority attesting to this help. 8 U.S.C. § 1184(p)(1). Garcia Cabrera obtained this certification on December 4, 2017.

An applicant's desire for a U visa is understandable. Once USCIS grants a U visa, the visa holder becomes a lawful temporary resident "for a period of not more than 4 years." 8 U.S.C. § 1184(p)(6). U visa holders also become eligible for several forms of related relief.[1]

On February 12, 2018, before Garcia Cabrera filed her application for a U visa, the Department of Homeland Security (DHS) issued a notice to appear, charging her with overstaying her B-2 visa and ordering her to appear before an IJ to determine whether she would be deported. Less than a month later — on or around March 7, 2018 — Garcia Cabrera filed her U visa application with USCIS.

In June and July 2018, Garcia Cabrera made three appearances before an IJ in Atlanta, Georgia. At the third appearance, Garcia Cabrera moved for a venue change to Charlotte, North Carolina. The IJ granted the venue change, noting in his order that the new IJ should schedule a status update in June 2019 due to the pending U visa application.

---

[1] For example, the Government must grant U visa holders authorization to work in the United States. 8 U.S.C. § 1184(p)(3)(B). Further, if an IJ or the BIA has entered a deportation order against the U visa holder, the visa holder can seek to cancel the order by filing a motion to reopen and terminate proceedings with the IJ or BIA. 8 C.F.R. § 214.14(c)(5)(i). Moreover, if a U visa holder remains physically present in the United States for a continuous period of at least three years after USCIS grants the visa, the Secretary of Homeland Security has discretion to make the visa holder a lawful permanent resident. 8 U.S.C. § 1255(m).

4

The new IJ disregarded the note to set a status update in June 2019, and instead set a hearing for September 27, 2018. Because her U visa application was pending, Garcia Cabrera moved to continue the deportation proceedings. The IJ denied the motion. Before her hearing, Garcia Cabrera renewed her motion for a continuance. At the hearing, the IJ again denied the motion, holding that even though there was a "significant probability" that USCIS would grant the U visa, Garcia Cabrera had failed to show good cause for a continuance. The IJ entered a deportation order.

Garcia Cabrera appealed from the denial of her motion for a continuance to the BIA. The BIA dismissed the appeal, agreeing with the IJ that she had failed to show good cause for a continuance. Garcia Cabrera then filed a petition for review with this court, asserting that the BIA and IJ abused their discretion in denying her a continuance.[2]

## II.

An IJ may grant a continuance of deportation proceedings for "good cause shown." 8 C.F.R. § 1003.29. We review a denial of a motion for a continuance for an abuse of discretion. *Onyeme v. INS*, 146 F.3d 227, 231 (4th Cir. 1998). The BIA or an IJ abuse their discretion if, *inter alia*, they deny the motion "without a rational explanation" or

___

[2] Garcia Cabrera also asserts constitutional claims that we need not, and do not, reach. *See Jean v. Nelson*, 472 U.S. 846, 854–55 (1985) ("'[W]e ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.' . . . Because the current statutes and regulations provide petitioners with nondiscriminatory parole consideration—which is all they seek to obtain by virtue of their constitutional argument— there was no need to address the constitutional issue." (second alteration in original) (quoting *Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 105 (1944))).

5

"inexplicably depart[] from established policies." *Lendo v. Gonzales*, 493 F.3d 439, 441 (4th Cir. 2007) (quoting *Onyeme*, 146 F.3d at 231).

In a series of precedential opinions, the Attorney General and BIA have carefully delineated policies governing when the BIA and IJs should grant a motion for a continuance on the basis of pending collateral relief, such as an application for a U visa. These opinions bind IJs and all DHS officers and employees and "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. § 1003.1(g)(1)–(2). In its 2012 ruling in *Matter of Sanchez Sosa*, the BIA held that there is a "rebuttable presumption" that a movant who has filed "a prima facie approvable application [for a U visa] with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time." 25 I. & N. Dec. 807, 815 (BIA 2012).

The Attorney General and BIA have reaffirmed this principle in more recent decisions. In *Matter of L-A-B-R-*, the Attorney General has emphasized that, when adjudicating a motion for a continuance on the basis of any type of pending collateral relief, the "principal focus [should] be on the likelihood that the collateral relief will be granted and will materially affect the outcome of the removal proceedings." 27 I. & N. Dec. 405, 406 (A.G. 2018). The Attorney General also listed other "germane secondary factors" that the BIA and IJs should consider, including whether the movant "has exercised reasonable diligence in pursuing that relief, DHS's position on the motion, the length of the requested continuance, and the procedural history of the case." *Id.* at 413, 415. But the Attorney General made clear that the secondary factors are not of "equal importance" to the primary ones. *Id.* at 413.

In January 2020, after the IJ denied Garcia Cabrera's motion but before the BIA affirmed the IJ's decision, the BIA reaffirmed *Matter of L-A-B-R-*'s holding that "the primary factors [it] should consider in assessing whether to grant . . . a continuance are: '(1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings.'" *Matter of L-N-Y-*, 27 I. & N. Dec. 755, 757 (BIA 2020) (quoting *Matter of L-A-B-R-*, 27 I. & N. Dec. at 413). It noted that the primary factors are "not dispositive," especially if "there are relevant secondary factors that weigh against continuing the proceedings," but nonetheless made clear that it "[c]onsider[ed] and balanc[ed] the relevant primary and secondary factors" in that case. *Id.* at 757–59.

## III.

As an initial matter, Garcia Cabrera and the Government disagree as to which decision is before us for review — just the BIA's decision, or both the BIA's and IJ's decisions. The dispute revolves around whether the BIA "adopted" the IJ's decision. If the BIA "affirms and adopts an IJ's decision and includes its own reasons for affirming," this court reviews both decisions. *Yanez-Marquez v. Lynch*, 789 F.3d 434, 444 (4th Cir. 2015). But if the BIA does not adopt the IJ's decision and instead "offer[s] its own reasons for denying relief," this court reviews only the BIA's decision. *Cabrera Vasquez v. Barr*, 919 F.3d 218, 223 (4th Cir. 2019); *see also Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020) (noting that, where the BIA issues "its own detailed opinion affirming the IJ with further reasoning of its own but without expressly adopting the IJ's opinion," this court focuses its review on the BIA's decision).

7

Here, the BIA did not issue a "detailed opinion . . . with further reasoning of its own." Rather, in a brief decision, the BIA indicated that it "agree[d] with the Immigration Judge's decision" and concluded that there was "no reason to disturb" that decision but did not explicitly state that it *adopted* the IJ's decision. Accordingly, the record is somewhat unclear as to whether the BIA adopted the IJ's decision. We need not resolve this ambiguity because, regardless of whether we review solely the BIA's opinion or both the BIA's and IJ's opinions, the outcome is the same.

A.

First, we consider the BIA's opinion. In its two-page opinion, the BIA acknowledged the importance of the primary factors. Indeed, the BIA cited *Matter of L-A-B-R-* and expressly stated that "the two principal factors for consideration in determining whether good cause exists for a continuance to await the resolution of a collateral matter are: (1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings." But the BIA failed to make any findings as to either of these primary factors.

Instead, the BIA held that Garcia Cabrera had not shown good cause for a continuance by focusing only on secondary factors, including that: (1) she had been "found removable and did not submit any applications for relief" to the IJ; (2) she could still pursue her U visa application and seek a stay of removal from DHS; (3) DHS opposed the motion; and (4) it would not be administratively efficient to grant a continuance.

The BIA abuses its discretion in denying a motion for a continuance when, as here, it relies solely on secondary factors. Neither the BIA nor an IJ may ignore relevant factors

8

or cherry-pick those that weigh in favor of a particular outcome. Under the Attorney General and BIA's established policies, if the primary factors weigh in the movant's favor, there is a "rebuttable presumption" that the motion should be granted, *Matter of Sanchez Sosa*, 25 I. & N. Dec. at 815, unless the "germane secondary factors" outweigh the primary factors, *Matter of L-A-B-R-*, 27 I. & N. Dec. at 415. The secondary factors are not of "equal importance" to the primary factors. *Id.* at 413. To be sure, the primary factors are "not dispositive," especially if "there are relevant secondary factors that weigh against continuing the proceedings." *Matter of L-N-Y-*, 27 I. & N. Dec. at 757–58. But the BIA did not state that it believed the secondary factors outweighed the primary ones — it simply failed to make findings as to the primary factors at all. The BIA utterly failed to explain how or why it departed from its established policies by ignoring the primary factors; in fact, it seemed to suggest (incorrectly) that it applied those policies simply by citing *Matter of L-A-B-R-*.

For these reasons, the BIA abused its discretion in denying the requested continuance.

## B.

When we expand our review to include the IJ's decision, the stated rationale of that opinion is different, but the outcome is the same. Unlike the BIA, the IJ did make findings as to the primary factors. Indeed, the IJ found there was a "significant probability" that

9

USCIS would grant Garcia Cabrera a U visa,[3] but then inexplicably departed from established policies by denying a continuance because a U visa would assertedly fail to materially affect the outcome of her proceedings.

The IJ reasoned that, even if granted, a U visa would not materially affect the outcome of Garcia Cabrera's proceedings because USCIS — not an IJ — has "sole jurisdiction" to grant adjustment of status based on a U visa. This rationale cannot be correct. It would mean that an IJ *never* has jurisdiction to grant a continuance based on a pending U visa application. But in fact, it is well-established that, although an IJ "does not have jurisdiction over a U visa petition, an alien in removal proceedings may request a continuance from the [IJ] to . . . await a decision from the USCIS on a pending U visa petition." *Matter of Sanchez Sosa*, 25 I. & N. Dec. at 812; *see also Caballero-Martinez v. Barr*, 920 F.3d 543, 550 (8th Cir. 2019) (holding that, "to the extent the BIA declined to remand" for a continuance "due to its lack of jurisdiction over [a] U Visa application, it erred"). In fact, there is a "rebuttable presumption" that a movant who has filed "a prima facie approvable application [for a U visa] with the USCIS will warrant a favorable exercise

---

[3] In *Gonzales v. Garland*, we recently held that an IJ did not abuse its discretion in denying a motion for a continuance. No. 20-1924, 2021 WL 4888394, at *10 (Oct. 20, 2021). The facts in that case critically differ from those in the case at hand. Gonzales sought a continuance on the theory that, if his mother succeeded in becoming a lawful permanent resident, he could seek to have the Attorney General cancel his removal if he could establish that removal would result in "exceptional and extremely unusual hardship" to his mother. *Id.* at *11 (quoting 8 U.S.C. § 1229b(b)(1)(D)). Not surprisingly, the IJ held that the collateral relief sought by Gonzales was of a "speculative nature." *Id.* at *10. In contrast, in the case at hand, as the IJ expressly recognized, the collateral relief is anything but "speculative." Rather, as the IJ noted, there is a "significant probability" that Garcia Cabrera would obtain the collateral relief.

of discretion for a continuance for a reasonable period of time." *Matter of Sanchez Sosa*, 25 I. & N. Dec. at 815. Moreover, under the U visa regulations, if USCIS were to grant Garcia Cabrera's application, she would have grounds to seek to cancel a deportation order issued by the BIA or IJ — even if this effort were ultimately unsuccessful, surely this constitutes a material effect on the proceedings. 8 C.F.R. § 214.14(c)(5)(i).

This legal error constitutes an abuse of discretion. And there is no way to avoid its impact on the IJ's decision. Indeed, the IJ said as much, explaining that "[t]his factor is the primary consideration in finding respondent has failed to meet their burden of proof for a continuance." Accordingly, in this case, we need not consider the IJ's analysis of the secondary factors.

This, of course, is not a holding that the IJ properly analyzed the secondary factors. We note that whether it is appropriate for an IJ or the BIA to rely on a secondary factor in any given case depends on how the IJ or BIA apply that factor. Thus, even though the Attorney General or BIA have listed certain secondary factors that the BIA and IJs may consider — such as administrative efficiency — the BIA and IJ must still analyze the facts of a particular case to determine whether that factor does, in fact, support or weigh against granting a continuance. But of course, certain secondary factors may never be valid considerations under the existing policies, regardless of the facts of any given case. For example, an IJ could not hold — as the IJ did here — that the fact that Garcia Cabrera could seek a stay of deportation from DHS weighed against a continuance. Since at least *Matter of Sanchez Sosa*, the BIA has recognized that DHS's separate stay procedure exists,

11

25 I. & N. Dec. at 815 n.10, and has nonetheless maintained guidelines for when IJs should grant continuances on the basis of a pending U visa application.

C.

In sum, we hold that the BIA and IJ abused their discretion in denying Garcia Cabrera's motion for a continuance. Both the BIA and IJ departed from the established policies set forth in precedential opinions in holding that Garcia Cabrera failed to show good cause. Under *Matter of L-A-B-R-*, the BIA and IJs must consider two factors above all others: (1) the likelihood that USCIS will grant the movant's U visa application, and (2) whether a U visa would materially affect the outcome of the movant's deportation proceedings. 27 I. & N. Dec. at 406. Both of these factors weigh in Garcia Cabrera's favor. The BIA recognized the existence of these factors but failed to consider whether or how they applied, focusing solely on less significant secondary factors. And although the IJ did address the primary factors, he nonetheless abused his discretion by failing to recognize that a U visa would materially affect the outcome of the deportation proceedings.

IV.

For the foregoing reasons, we grant the petition for review, vacate the BIA's decision, and remand to the BIA for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED; VACATED*

*AND REMANDED TO THE BIA FOR FURTHER PROCEEDINGS*

RUSHING, Circuit Judge, concurring in the judgment:

I agree that the BIA's decision must be vacated because it failed to address the two primary factors for assessing whether Petitioner demonstrated good cause to continue her deportation proceedings while her U visa application remains pending. Although the decision to grant or deny a motion to continue deportation proceedings "is within the sound discretion of" the agency, the BIA abuses its discretion when it "inexplicably depart[s] from established policies." *Gonzalez v. Garland*, 16 F.4th 131, 144 (4th Cir. 2021) (internal quotation marks omitted). Here, the BIA correctly recited the legal framework, including the primary and secondary factors it is required to consider, but then inexplicably failed to analyze the primary factors as applied to this case. This departure from established policy is an abuse of discretion that requires us to vacate the BIA's decision and remand for the agency to conduct a complete analysis of Petitioner's continuance motion.

I.

Precedential opinions from the Attorney General and the BIA establish the framework for determining whether an alien has shown good cause for a continuance as required by 8 C.F.R. § 1003.29. In *Matter of L-A-B-R-*, the Attorney General held that immigration judges should "apply a multifactor test to assess whether good cause exists for a continuance for a collateral proceeding." 27 I. & N. Dec. 405, 412 (A.G. 2018). That analysis "must focus principally on two factors: (1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings." *Id.* at 413. Immigration judges also must consider "germane secondary factors," which include, but are not limited to, the alien's diligence in seeking

13

collateral relief, DHS's position on the motion, and administrative efficiency. *Id.* at 415–417. "It may also be appropriate to consider the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the continuance motion." *Id.* at 415. The immigration judge must conduct a "balancing analysis" weighing the strength and weakness of all the relevant factors. *Id.* at 417. Although the alien's likelihood of success in the collateral proceeding remains "paramount," it is not dispositive. *Id.* at 417–418. As the Attorney General explained in one example, "because adjustment of status typically requires an immediately available visa, good cause does not exist if the alien's visa priority date is too remote to raise the prospect of adjustment of status above the speculative level." *Id.* at 418 (internal citations omitted).

In *Matter of L-N-Y-*, a three-member panel of the BIA applied the Attorney General's guidance in the same context we have here, a motion for a continuance to await the adjudication of the alien's U visa application. 27 I. & N. Dec. 755 (BIA 2020). The BIA recognized that *Matter of L-A-B-R-* required it to "consider and balance all relevant factors" in assessing whether the alien had shown good cause for a continuance. *Id.* at 757 (internal quotation marks omitted). Although there was "no dispute" that the alien in that case was "prima facie eligible for a U visa and that a grant of his visa petition by the USCIS would materially affect the outcome of his removal proceedings," the BIA held that "these primary factors [were] not dispositive," especially where "relevant secondary factors . . . weigh against continuing the proceedings." *Id.* at 757–758. The BIA concluded that the secondary factors in that case—including the alien's lack of diligence, DHS's opposition,

14

the alien's detained status, and "the speculative and indefinite nature of his continuance request, given the uncertainty as to when a U visa will be approved or become available"—outweighed the primary factors such that there was no good cause for a continuance. *Id.* at 759.

In view of this precedent, the majority's statement that "[t]he BIA abuses its discretion in denying a motion for a continuance when, as here, it relies solely on secondary factors" can only be taken to mean that the BIA errs when it does so *without discussing the primary factors*. Majority Op. 8. To hold otherwise—that the agency can never deny a continuance based on the secondary factors—would contradict *Matter of L-N-Y-*, which expressly holds that the agency may rely on secondary factors if they outweigh the primary considerations set forth in *Matter of L-A-B-R-*. *Matter of L-N-Y-*, 27 I. & N. Dec. at 759.

Petitioner, citing *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807, 815 (BIA 2012), contends that an immigration judge must apply a rebuttable presumption in favor of a continuance whenever an alien has filed a prima facie approvable U visa application with the USCIS. But *Matter of L-A-B-R-* "refined th[e] analytical framework" of *Matter of Sanchez Sosa*, as the BIA recognized in *Matter of L-N-Y-*, 27 I. & N. Dec. at 757. In *Matter of L-N-Y-*, the BIA did not apply or even mention the presumption, despite finding that the alien was prima facie eligible for a U visa. Instead, following the Attorney General's guidance, the BIA "[c]onsider[ed] and balanc[ed] the relevant primary and secondary factors" and concluded that the secondary factors in that case outweighed the alien's prima facie eligibility for a U visa. *Id.* at 759; *see id.* at 757. Such an analysis is perhaps consistent with applying and then rebutting a presumption, but that is not how the BIA

15

characterized its reasoning in *Matter of L-N-Y-*. It thus appears that the presumption established in *Matter of Sanchez Sosa* has been subsumed within a multifactor balancing test in which prima facie eligibility for a U visa is the paramount consideration.

## II.

Turning to the case at hand, the BIA issued a written decision explaining why it was "not persuaded that good cause for a further delay of the proceedings was demonstrated." A.R. 3. The BIA provided its own reasoning and also specifically incorporated "the Immigration Judge's concerns regarding administrative efficiency." A.R. 4. I therefore review the Board's opinion, which constitutes the final order of removal, and only that portion of the Immigration Judge's opinion that was adopted by the Board. *See Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th Cir. 2021); *Martinez v. Holder*, 740 F.3d 902, 908 & n.1 (4th Cir. 2014), *as revised* (Jan. 27, 2014).

In its opinion, the BIA acknowledged the applicable legal framework, including the primary and secondary factors it was required to consider. *See* A.R. 3 (citing *Matter of L-A-B-R-* and *Matter of L-N-Y-*). Yet the BIA discussed only the secondary factors. It did not evaluate Petitioner's likelihood of success on her U visa application or assume that she would be successful. Nor did it consider whether a successful application would materially affect the outcome of her removal proceedings. It simply ignored the primary factors. Although the secondary factors may outweigh the primary factors in some cases—as the BIA here acknowledged—precedent requires the decisionmaker to actually "consider and balance" those factors in assessing whether good cause for a continuance has been shown. *Matter of L-N-Y-*, 27 I. & N. Dec. at 757. The BIA failed to do so here and therefore abused

16

its discretion.    I agree with the Court's judgment vacating the BIA's decision and remanding for further proceedings.